UNIVERSITY MICROFILMS v SCIO TOWNSHIP

1. Taxation—Property Tax—Tangible Personal Property—Micro-
   film Library—Statutes.

   A library of microfilmed master negatives of rare books, early
   English and American books, periodicals, doctoral dissertations
   and other source materials used to produce copies for custom-
   ers upon request is tangible personal property under the Michi-
   gan general property tax act, because the value of the informa-
   tion is not peculiar to the owner alone but is valuable in and of
   itself (MCLA 211.1 et seq.; MSA 7.1 et seq.).

2. Taxation—Exemptions—Statutory Construction—Special
   Tools—Microfilm Library—Statutes.

   Exemption provisions in a tax act are to be strictly construed in
   favor of the taxing agency; therefore, the special tools exemp-
   tion in the general property tax act should not be construed to
   include a library of microfilmed master negatives which does
   not fit within the statutory list of special tools or the tax
   commission's definition of "special tools" (MCLA 211.9b; MSA
   7.9[2]).

Appeal from the Michigan Tax Tribunal. Sub-
mitted June 10, 1977, at Detroit. (Docket Nos.
29547–29549.) Decided July 7, 1977. Leave to ap-
peal applied for.

Petition to the Michigan Tax Tribunal by Uni-
versity Microfilms seeking a ruling that a tax
assessment made by Scio Township taxing plain-
tiff's microfilm negatives as tangible personal prop-
erty was improper. Decision for defendants. Plain-
tiff appeals. Affirmed.

*Butzel, Long, Gust, Klein & Van Zile* (by *John*

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 71 Am Jur 2d, State and Local Taxation § 265.

*H. Dudley, Jr.,* and *Lawrence R. Van Til),* for plaintiff.

*Reading & Etter,* for defendant.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

J. H. GILLIS, P. J. Plaintiff is in the business of supplying copies of printed material to scholars and libraries. Plaintiff has copied rare books, early English and American books, periodicals, doctoral dissertations and other sources onto microfilm. These microfilmed copies, called master negatives, are kept in a vault by plaintiff. Additional copies are produced upon request from these master negatives and sold to customers in microfilm or photocopy form.

Plaintiff's business was formed in 1938. In 1973, defendant, for the first time, included within its annual assessments of plaintiff's personal property the net book value of the master negative microfilm.[1] Plaintiff appealed to the Michigan tax tribunal the tax assessments for the master negatives for the years 1972, 1973, 1974 and 1975 claiming that the property is exempt from personal property taxation. The tax tribunal rendered a decision against plaintiff on June 17, 1976. Plaintiff appeals to this Court.

Plaintiff submits two reasons for its contention that its master negatives are not subject to Michigan's personal property tax. Plaintiff argues first that the master negatives are intangible property

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The failure of defendant to assess plaintiff for so many years was due to the failure of plaintiff to report the master negatives on its personal property statements. Plaintiff then changed its accounting system in 1973 which disclosed to defendant the existence of plaintiff's microfilm reservoir.

because the value of the property is in the information that is stored and not in the film itself, and secondly, if the master negatives are held to be tangible personal property, that they are special tools and therefore exempt from the tax, MCLA 211.9b; MSA 7.9(2). We will address the issues *seriatim.*

### *Are plaintiff's master negatives tangible personal property?*

Section 1 of the Michigan general property tax act, MCLA 211.1 *et seq.;* MSA 7.1 *et seq.* provides that "all property, real and personal, within the jurisdiction of this state not expressly exempted, shall be subject to taxation". MCLA 211.1; MSA 7.1. Section 8 lists specifically the personal property subject to taxation and further includes "[a]ll other personal property not herein enumerated, and not especially exempted by law". MCLA 211.8; MSA 7.8.

In support of its contention that the master negatives are intangible personal property, plaintiff directs us to a line of Michigan cases holding abstract books to be intangible, see *Bay Trust Co v Bay City,* 280 Mich 44; 273 NW 437 (1937), *Loomis v City of Jackson,* 130 Mich 594; 90 NW 328 (1902), *Perry v Big Rapids,* 67 Mich .146; 34 NW 530 (1887), *Dart v Woodhouse,* 40 Mich 399; 29 AR 544 (1879), and also to cases holding computer "softwear" (cards, tapes, discs, etc.) to be intangible, see *District of Columbia v Universal Computer Associates, Inc,* 151 US App DC 30; 465 F2d 615 (1972), *Texas Instruments, Inc v United States,* 407 F Supp 1326 (ND Tex, 1976), *Greyhound Computer Corp v State Department of Assessments and Taxation,* 271 Md 674; 320 A2d 52 (1974). Plaintiff argues that its master negatives are analogous to

abstract books and computer "softwear" because "[t]hey are only valuable for the information they contain". *Perry v Big Rapids, supra,* at 147.

Defendant counters by arguing that plaintiff's supply of master negatives is in actuality a library and that libraries which exist for profit are subject to taxation. MCLA 211.9; MSA 7.9. Defendant rejects plaintiff's cited authority by arguing that the Michigan abstract cases are limited to abstracts and should not be extended to other materials and also that plaintiff's master negatives are not computer "softwear" and therefore do not come within the holdings of the computer cases.

In view of the following quotation from the *Bay Trust Co* case, defendant's theory of a judicially carved property tax exemption regarding abstracts has merit.

"Since *Dart v Woodhouse, supra,* was decided in 1879 we have, by a continued line of authority, established the rule of property that these books and records are not the subject of taxation. This decision has, for more than 50 years, been recognized as the law concerning the taxation of abstract books and many sessions of the legislature have met in the meantime without any action upon this subject matter. The record shows that there has been no material change in the business or methods of abstracting titles to real estate and we must hold that abstract books and records are not property within the purview of our taxing statutes." *Bay Trust Co v Bay City, supra,* at 48.

Although defendant's analysis is tempting, we are not prepared to foreclose the possibility of other forms being analogous to abstracts; however, we do find that plaintiff's master negatives are not analogous.

We agree with plaintiff that its master negatives are similar to abstracts and computer "softwear"

in that all contain information, but we disagree that that is what controls the determination of intangibility. The value of an abstract is personal, that is, it is dependent on the work of the one who controls the information. If it is left to go out of date or is inaccurate, it loses its value. In *Perry,* our Supreme Court compared abstracts to surveyor's notes, and author's memoranda and a druggist's recipes. *Perry v Big Rapids, supra,* at 147. Similarly, the value of computer "softwear" is not in the card or disc itself, but rather in the synthesization, compilation, organization and creation of the computer programs contained therein. *District of Columbia v Universal Computer Associates, Inc, supra,* at 617. The value is personal. Payment is made for the service and the expert knowledge. *District of Columbia v Universal Computer Associates, Inc, supra,* at 617–618, *Texas Instruments, Inc v United States, supra,* at 1342, *Greyhound Computer Corp v State Department of Assessments and Taxation, supra.*

The value of plaintiff's master negatives is in the printed word itself. The information needs no correction or updating. In fact, the very reason that plaintiff's material is in demand is because it is in the original language and unchanged. Plaintiff has not added to the original print or paid someone with expert knowledge to systematize relevant material into a new product. The value of the information is not peculiar to plaintiff alone, but is valuable in and of itself. It is for these reasons that plaintiff's master negatives are tangible property.

*Are master negatives special tools?*

Having determined that plaintiff's master nega-

tives are tangible property, we now address the second issue.

Plaintiff contends that its master negatives are "special tools" as defined by § 9b of the Michigan general property tax act and are therefore exempt from taxation. Section 9b provides:

"(1) All special tools, as herein defined, are exempt from taxation.

"(2) The term 'special tools' means those manufacturing requisites, such as dies, jigs, fixtures, molds, patterns, gauges and so forth, as defined by the state tax commission, which are held for use and not for sale in the ordinary course of business.

"(3) The exemption of special tools shall not be deemed an exclusion of the value of same from taxation when such value may enter into the valuation of inventory produced for sale." MCLA 211.9b; MSA 7.9(2).

The state tax commission, as quoted by the tax tribunal in its opinion in this case, has defined "special tools" as:

"Those finished devices such as dies, jigs, fixtures, molds, patterns and special gauges used in the manufacturing function for which they are designed and/or are acquired or made for the production of products or models and are of such a specialized nature that their utility and amortization cease with the discontinuance of such products or models."

In its opinion, the tax tribunal found that plaintiff's master negatives do not wear out or become obsolete in a short time and therefore do not come within the definition of "special tool". Plaintiff argues that master negatives are used as a pattern to reproduce an image and are therefore similar to molds, dies and the like. Additionally, plaintiff submits that there is no requirement that the tool

be short lived in order to qualify as a "special tool", and to the extent that the tax commission's definition contains that requirement it is erroneous.

Exemption provisions are to be strictly construed in favor of the taxing agency. *Evanston YMCA Camp v State Tax Commission,* 369 Mich 1; 118 NW2d 818 (1962). Section 9b states that those tools classified as special tools are "dies, jigs, * * * *as defined* by the state tax commission". (Emphasis supplied.) The tax commission has defined these items. We agree with the tax tribunal that plaintiff's master negatives do not meet the definition.

Affirmed. No costs, a public question being involved.