**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 29, 2002**

DANSE CORPORATION,

    Petitioner-Appellant,

v

CITY OF MADISON HEIGHTS,

    Respondent-Appellee.

No. 119011

_____

PER CURIAM

The Michigan Tax Tribunal entered a judgment, holding that certain personal property belonging to petitioner did not constitute "special tools" and was therefore subject to taxation. On appeal, petitioner argued that guidelines utilized by the Tax Tribunal were not determinative, since they were not rules promulgated in accordance with the Administrative Procedures Act.[1] The Court of Appeals affirmed.[2] We reverse the judgments of the Tax Tribunal and

---

[1] MCL 24.201 *et seq*.

[2] Unpublished opinion per curiam, issued March 23, 2001 (Docket No. 215486).

Court of Appeals because the guidelines relied on to expand the definition of "special tools" did not have the force of law as they were not promulgated under the APA. We remand this case to the Tax Tribunal for reconsideration in light of this opinion.

I

Petitioner manufactures roof line ridge vents for residential construction. In that process it uses plastic injection molds and related components. It excluded the molds from personal property statements and, as required, noted that fact on the personal property statements it filed. A personal property audit was performed, and respondent subsequently notified the State Tax Commission that personal property allegedly subject to taxation had not been included on petitioner's 1994 and 1995 personal property statements and sought an increase in the assessment valuation. The State Tax Commission held that the molds were not exempt "special tools" within the meaning of MCL 211.9b and corrected increased assessment valuations were approved. Petitioner filed an appeal with the Michigan Tax Tribunal. After an evidentiary hearing, the Tax Tribunal held that petitioner was not entitled to a MCL 211.9b exemption for the molds. It found that the Legislature intended to allow the State Tax Commission to define what "special tools" meant.

2

The Court of Appeals, with one judge dissenting, affirmed. Petitioner has applied for leave to appeal.[3]

## II

Issues concerning the interpretation and application of statutes are questions of law that this Court decides de novo. *Lincoln v General Motors Corp,* 461 Mich 483, 489-490; 607 NW2d 73 (2000). In *Michigan Bell Telephone Co v Treasury Dep't*, 445 Mich 470, 476; 518 NW2d 808 (1994), we noted that, in the absence of fraud, review of a Tax Tribunal decision is "limited to determining whether the tribunal erred in applying the law or adopted a wrong principle[.]" "[F]actual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Id.*

## III

MCL 211.9b provides:

> (1) All special tools are exempt from taxation.
>
> (2) As used in this section, "special tools" means those manufacturing requisites, such as dies, jigs, fixtures, molds, patterns, gauges, or other tools, *as defined by the state tax commission*, that are held for use and not for sale in the ordinary course of business.
>
> (3) Special tools are not exempt from taxation if the value of the special tools is included in the valuation of inventory produced for sale. [Emphasis added.]

---

[3] The motion to file a brief amicus curiae is granted.

3

The State Tax Commission has adopted a rule defining "special tools."[4]  What is commonly referred to as rule 21 provides:

> "Special tools" as used in section 9b of the act, means those finished or unfinished devices, such as dies, jigs, fixtures, molds, patterns, and special gauges, used or being prepared for use in the manufacturing function for which they are designed or are acquired or made for the production of products or models and are of such specialized nature that their utility and amortization cease with the discontinuance of such products or models.

Pursuant to MCL 211.10e, assessing officials are required to use an assessor's manual prepared by the State Tax Commission "as a guide in preparing assessments."  The Tax Tribunal utilized seven guidelines from the State Tax Commission *Assessor's Manual* in reaching the determination that the plastic injection molds were not "special tools"[5]

---

[4] 1999 AC, R 209.21.

[5] Chapter 15 of the *Assessor's Manual*, entitled "Personal Property" states at pp 15-6 and 15-7:

> The following guidelines should be used by the assessor when making the determination of whether a particular device is a special tool.
>
> 1.  Special tools include devices such as dies, jigs, fixtures, molds, patterns and gauges. Special tools do not include devices which differ in nature from dies, jigs, fixtures, molds, patterns, and gauges.  Thus the press into which a die is placed is not a special tool.
>
> 2.  Special tools are specially designed to produce a particular product and could not be used to produce a different product.

and therefore were not exempt from personal property tax under MCL 211.9b. In determining that the *Assessor's Manual* guidelines were applicable, the Tax Tribunal stated in part:

> The State Tax Commission (STC) further provided seven guidelines to determine whether a "particular device is a special tool" based on that tool's purpose, "utility and amortization." Although these guidelines are clarifications of its Rule 21 general definition and not promulgated rules, this Tribunal must look at the Legislature's intent of allowing the State Tax Commission to not only define what a special tool is, but to further allow the STC to clarify how to recognize a special tool when an assessor sees it and the "utility and

3. Special tools are used to produce models or products which are expected to change. Thus, a die used to produce a car fender is likely a special tool because the fender will predictably change, whereas a mold used in the manufacture of a common wrench will not change for many years and is not a special tool.

4. Special tools frequently become obsolete before they wear out and therefore have a short useful life.

5. Models or products produced by special tools are usually expected to change within 3 years.

6. A die, jig, etc., may have a short life simply because it wears out fast rather than because it is used to produce a model. In this case the tool would not be exempt as a special tool.

7. The term "amortization" used by the State Tax Commission in its definition of special tools refers to the writing off of an expenditure over a certain period of time. This reference to amortization in the definition of special tools is more of a descriptive aid than a condition that must be met.

5

amortization" of that special tool.

The Court of Appeals majority agreed that the factors from the *Assessor's Manual* were determinative. The Court relied on MCL 211.10e, which provides:

> All assessing officials, whose duty it is to assess real or personal property on which real or personal property taxes are levied by any taxing unit of the state, shall use only the official assessor's manual or any manual approved by the state tax commission, consistent with the official assessor's manual, with their latest supplements, as prepared or approved by the state tax commission as a guide in preparing assessments. Beginning with the tax assessing year 1978, all assessing officials shall maintain records relevant to the assessments, including appraisal record cards, personal property records, historical assessment data, tax maps, and land value maps consistent with standards set forth in the assessor's manual published by the state tax commission.

It also relied on OAG, 1981-1982, No. 5,909, p 207 (May 20, 1981). It further noted that exemption statutes are to be strictly construed in favor of the taxing unit and that a prior decision of that Court appeared to accept a definition of "special tools" that included a factor from the guidelines. The dissenting judge would have held that the *Assessor's Manual* did not have legal authority because it was not promulgated as an administrative rule and thus could not impose additional requirements to meet the definition of "special tools" beyond that contained in rule 21. The dissenting judge would have held that the plastic injection molds were "special tools" as defined by rule 21 and that,

6

therefore, petitioner was entitled to the statutory exemption.

IV

In order for an agency regulation, statement, standard, policy, ruling, or instruction of general applicability to have the force of law, it must fall under the definition of a properly promulgated rule. If it does not, it is merely explanatory. *Goins v Greenfield Jeep Eagle*, 449 Mich 1, 7-10; 534 NW2d 467 (1995). As the Tax Tribunal noted, rule 21 was properly promulgated under the APA, and therefore has the force of law.

However, it is undisputed that the *Assessor's Manual* was not promulgated as an administrative rule. Therefore, the manual may be used as a "guide," but does not itself have the force of law. The portion referred to can only be used to explain rule 21; it cannot impose requirements not found in rule 21 to meet the definition of "special tools." Thus, for petitioner to have a valid exemption under MCL 211.9b, the molds at issue need only meet the requirements of rule 21.

MCL 221.10e does not exempt the *Assessor's Manual* from APA promulgation requirements. The rules governing construction of a statute are well known. Giving effect to the intent of the Legislature is a fundamental task. We are required to examine the plain language of the involved statutes. *In re MCI Telecommunications*, 460 Mich 396, 411;

7

596 NW2d 164 (1999). Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written. *Tryc v Michigan Veterans' Facility,* 451 Mich 129, 135; 545 NW2d 642 (1996). No further construction is necessary or allowed to expand what the Legislature clearly intended to cover. *In re MCI, supra* at 411. The court must presume that every word has some meaning and, if possible, effect should be given to each provision. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999).

Following these principles of statutory construction, we conclude that the plain language of MCL 211.10e demonstrates a legislative intent that the *Assessor's Manual* is to be used "as a guide." It cannot be concluded from a plain reading of the statute that the Legislature intended that the State Tax Commission was entitled to bypass the APA and promulgate the *Assessor's Manual* as a rule having the force of law. The mandatory "shall" language in MCL 211.10e refers to the requirement that assessors use the *Assessor's Manual* as a guide. The statute was apparently enacted in order to create uniformity among appraisal techniques. See OAG, *supra* at 207.[6]

---

[6] We note that this Opinion of the Attorney General was cited by defendant as authority that the manual has the force of law. However, a closer reading of the OAG reveals that the

Likewise, MCL 211.9b does not provide the authority for a conclusion that the Legislature intended that the State Tax Commission could bypass the promulgation requirements of the APA. We quote that statute again:

> (1) All special tools are exempt from taxation.
>
> (2) As used in this section, "special tools" means those manufacturing requisites, such as dies, jigs, fixtures, molds, patterns, gauges, or other tools, *as defined by the state tax commission*, that are held for use and not for sale in the ordinary course of business.
>
> (3) Special tools are not exempt from taxation if the value of the special tools is included in the valuation of inventory produced for sale. [Emphasis added.][7]

Attorney General concluded that the manual is not subject to the promulgation rules of the APA because they are not rules. As a result, local assessors could be forced to use the manual as a guide. Contrary to defendant's assertion, this does not mean that the Attorney General opined that the manual has the force of law. In any event, opinions of the Attorney General are not binding on courts as precedent. *Frey v Dep't of Management & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987). Indeed, the extent to which a governmental agency is even bound by an opinion of the Attorney General is open to question. Compare *East Grand Rapids Sch Dist v Kent Co*, 415 Mich 381, 394; 330 NW2d 7 (1982) (a state agency is not bound by an Attorney General opinion that a statute is unconstitutional), and *Traverse City Sch Dist v Attorney General*, 384 Mich 390, 410, n 2; 185 NW2d 9 (1971) (an opinion of the Attorney General commands allegiance of state agencies).

[7] While the rule-making authority of the State Tax Commission may more precisely be characterized as an administrative or executive branch function, it is clear nonetheless that the resemblance of this authority to traditional "law-making" has prompted the Legislature's requirement that such authority be exercised only in

The phrase "as defined by the state tax commission" does not, by itself, allow the State Tax Commission to define "special tools" without complying with the APA. The Legislature has prescribed an elaborate procedure for rule promulgation in order to "ensure that none of the essential functions of the legislative process are lost in the course of the performance by agencies of many law-making functions once performed by [the Legislature]." *Coalition for Human Rights v DSS*, 431 Mich 172, 177-178; 428 NW2d 335 (1988). "[T]he adoption of a rule by an agency has the force and effect of law and may have serious consequences . . . for many people." *Id*. at 177.

There is no indication the Legislature authorized the State Tax Commission to adopt a rule-like definition using a procedure other than that required by the APA. We will not attribute such an intent to the Legislature absent a clear statement from the Legislature. Therefore, without a clear legislative intent to waive the requirements of the APA, we will not sanction state agency "law-making" in the absence of the legislatively designed protections of the APA. Accordingly, MCL 211.10e cannot be said to have created an exemption from the requirements of the APA for the *Assessor's Manual.*

conformity with the APA.

10

Having concluded that rule 21 governs, we now apply to it the same rules of statutory construction. As with a statute, we are governed by its plain language. We agree with the Court of Appeals dissenting judge's reading of rule 21 as establishing two requirements for qualification for the special tools exemption. First, the special tool must be "used" or be "being prepared for use" in a manufacturing function. It is undisputed that the molds here meet this requirement. Second, the special tools must be of "such a specialized nature that their utility and amortization cease with the discontinuance of such products or models." The Tax Tribunal and Court of Appeals opined that there also is a short useful life requirement. The *Assessor's Manual* guidelines contain such a requirement, but the plain language of rule 21 does not allow that construction. There is nothing in rule 21 suggesting that a proposed special tool have a *short* useful life. As the dissenting judge in the Court of Appeals noted, rule 21 only addresses whether the tool will have usefulness after the product or model is discontinued. In the words of rule 21, the question is whether the molds' "utility and amortization cease with the discontinuance of such products or models." There is no other time condition.[8]

_____

[8] *Univ Microfilms v Scio Twp*, 76 Mich App 616; 257 NW2d 265 (1977), is not persuasive. As pointed out by the dissenting judge in the Court of Appeals, it is not clear what

11

Accordingly, we reverse the judgments of the Tax Tribunal and Court of Appeals and remand this matter to the Tax Tribunal for reconsideration in light of this opinion. MCR 7.302(F)(1).

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

---

the Court's holding was founded on. The Court may or may not have relied on the life-expectancy issue. If it did, the holding would lack any basis in the plain language of rule 21.

S T A T E   O F   M I C H I G A N

SUPREME COURT

DANSE CORPORATION,

    Petitioner-Appellant,

v                                               No. 119011

CITY OF MADISON HEIGHTS,

    Respondent-Appellee.
_____

KELLY, J. (*dissenting*).

A per curiam opinion is an inappropriate mechanism for resolving this dispute. The issue is one of statutory interpretation concerning the phrase "special tools" found in MCL 211.9b. Resolution of the issue requires consideration of more than just the language found in that particular statute. It also implicates the language of MCL 211.10e, mandating the use of the assessor's manual. Considering the statutes together, it is questionable whether a plain language analysis of MCL 211.9b adequately resolves the matter.

This Court should not, therefore, decide the dispute in a per curiam decision. Instead, it should allow full briefing and oral argument. I would grant leave to fully consider the effect of MCL 211.10e on MCL 211.9b.

**CAVANAGH, J., concurred with KELLY, J.**