# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN CONSOLIDATED GAS
COMPANY,

UNPUBLISHED
February 19, 2015

Plaintiff/Counter-Defendant-
Appellee,

v

No. 319234
Wayne Circuit Court
LC No. 12-004646-CC

MIG, LLC,

Defendant/Counter-Plaintiff-
Appellant.

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Defendant/Counter-Plaintiff, MIG, LLC, appeals as of right the order granting partial summary disposition to plaintiff/counter-defendant Michigan Consolidated Gas Company (MichCon). At issue on appeal is who owns a gas main under real property owned by MIG from 2006 to 2011. The trial court ruled that because the pipeline and appurtenances were assessable as personal property under the General Property Tax Act (GPTA), MCL 211.1 *et seq*., MichCon retained ownership despite MIG's acquisition of the real property by tax foreclosure sale. For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND

This case is about whether MichCon lost ownership of certain utilities after MIG acquired at a foreclosure sale the real property under which they are located. The utilities are part of a system providing natural gas to Detroit Metropolitan Wayne County Airport. The facts stretch back to 1969, when MichCon—a subsidiary of DTE Energy Company—began constructing the gas main at issue. The main is a 30-inch diameter pipeline with appurtenant valves, risers, blowoffs and an enclosure fence, known collectively as the "South Suburban Pipeline." The South Suburban Pipeline is located on real property known as the "Gate Valve Site," which MichCon acquired by warranty deed in 1969. Because of an alleged problem with MichCon's tax payment, in 2006 the Wayne County Treasurer instituted foreclosure proceedings on the Gate Valve Site. This ultimately culminated in MIG's acquisition of the site by quitclaim deed. The deed was recorded on October 19, 2006.

-1-

Five years later, MichCon began the construction of a new eight-inch diameter gas main called the "DTW Pipeline," partially located on the Gate Valve Site. MichCon was apparently unaware of the prior foreclosure and had never ceased operating the South Suburban Pipeline. It was not until attempting to connect the DTW and South Suburban Pipelines, however, that MichCon was informed that MIG owned the Gate Valve Site and that MichCon's contractors were allegedly trespassing.

## II. PROCEEDINGS

On April 5, 2012, MichCon filed suit requesting a declaration that, despite the foreclosure sale, it still owned the South Suburban Pipeline and had retained the right to access and maintain it. Alternatively, MichCon sought to acquire an easement over the Gate Valve Site through eminent domain. MichCon filed its declaration of taking that same day. MIG responded, challenging the necessity of the proposed taking, and additionally filed counterclaims to quiet title and to recover rent allegedly owed for MichCon's use of the South Suburban Pipeline for the previous six years under MCR 3.411(E). The trial court ordered an easement over the Gate Valve Site surrendered to MichCon for just compensation, but expressly deferred resolution of all issues related to property ownership. MichCon's motion for partial summary disposition followed.

In that motion, MichCon argued that because MCL 211.8(g) classified the South Suburban Pipeline as personal property, the foreclosure sale did not affect its ownership of that pipeline. MichCon further maintained that the foreclosure did not affect its right to access that pipeline since it had retained that right based on its prior ownership of the real property. MIG countered that the South Suburban Pipeline as part of the real property could not constitute personal property, and that MichCon could not claim to have retained an easement over real property it previously owned.

Following argument, the trial court ruled that under MCL 211.8(g) the South Suburban Pipeline constituted personal property owned by MichCon throughout the entirety of this case irrespective of the foreclosure sale. Although not germane to this appeal, the court additionally addressed the issues related to MichCon's easement claim. However, because the parties disputed the substance of that ruling, they entered into a stipulation recognizing MichCon's easement as reflected in the final order of July 30, 2013.

## III. ANALYSIS

MIG's appeal centers on the trial court's interpretation and application of the GPTA. That Act governs, among other things, the taxation of property and the sale of real property for unpaid taxes. Pertinent here is whether MCL 211.8(g) shields MichCon's interest in the South Suburban Pipeline from passing to MIG when MIG acquired the Gate Valve Site. MIG claims the trial court erred in holding that § 8(g) does just that.

### A. STANDARD OF REVIEW

The trial court made its ruling in the context of granting MichCon's motion for summary disposition under MCR 2.116(C)(10). "We review de novo decisions regarding summary disposition and issues of statutory interpretation." *Lear Corp v Dep't of Treasury*, 299 Mich

App 533, 536; 831 NW2d 255 (2013). "A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Curry v Meijer, Inc*, 286 Mich App 586, 590; 780 NW2d 603 (2009) (citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing this issue, we consider all of the pleadings, affidavits, depositions, admissions and other documentary evidence. *Corely v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "Where the burden of proof rests with the nonmoving party, that party must respond with documentary evidence to demonstrate the existence of a genuine issue of material fact for trial." *Curry*, 286 Mich App at 591 (citation omitted). The nonmoving party's failure to respond with such evidence results in judgment for the moving party. *Id*. at 591 (citation omitted).

## B. MCL 211.8(g)

The goal when interpreting any statute is to ascertain and give effect to the Legislature's intent. *Danse Corp v City of Madison Heights*, 466 Mich 175, 181-182; 644 NW2d 721 (2002). To do this, we first examine the statute's plain language. *Id*. at 182. If it is clear and unambiguous, no further construction is permitted. *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). In reading a statute's plain language, we give terms their ordinary and plain meaning unless the statute defines a particular term in which case that definition alone controls. *Id*. at 135-136. As set forth below, application of MCL 211.8(g)'s plain language is dispositive in this case.

To begin, § 8 of the GPTA identifies the property to be assessed as personal property "[f]or purposes of taxation." Subsection 8(g) applies to the property of utility companies like MichCon,[1] and contains two portions relevant to our determination. The first designates the property of utility companies to be assessed as personal property for purposes of taxation. It provides as follows:

> The mains, pipes, supports, and wires of these [certain utility] companies, including the supports and wire or other line used for communication purposes in the operation of those facilities, and the rights of way and the easements or other interests in real property by virtue of which the mains, pipes, supports, and wires are erected and maintained, shall be assessed as personal property in the local tax collecting unit where laid, placed, or located. [MCL 211.8(g).]

Before proceeding, it bears repeating that the South Suburban Pipeline consists of appurtenant valves, risers, blowoffs and an enclosure fence. Based on this, it appears that all

---

[1] These utility companies include "gas and coke companies, natural gas companies, electric light companies, waterworks companies, hydraulic companies, and pipe line companies transporting oil or gas as public or common carriers . . . ." MCL 211.8(g). It is undisputed that MichCon is a utility company falling within the purview of this subsection.

components of the South Suburban Pipeline qualify as property to be assessed as personal property under this portion of subsection 8(g). And, indeed, no party disputes this conclusion. Instead, the dispute lies in whether the GPTA does more than merely define certain property as personal property for taxation purposes, and it is here where the second relevant portion of subsection 8(g) comes into play.

Specifically, after requiring that certain property be assessed as personal property, subsection 8(g) goes on to protect that same property from the effects of assessments or taxes levied on the real property where it is located and the consequences of not paying those taxes. The relevant language consists of two clauses—labeled by the parties as Clause 1 and Clause 2. Those clauses provide:

> [Clause 1:] None of the property assessable as personal property under this subdivision shall be affected by any assessment or tax levied on the real property through or over which the personal property is laid, placed or located,

> [Clause 2:] nor shall any right of way, easement, or other interest in real property, assessable as personal property under this subdivision, be extinguished or otherwise affected in case the real property subject to assessment is sold in the exercise of the taxing power. [MCL 211.8(g).]

In addressing this language, MIG argues that because the GPTA is a taxing statute, it can do no more than define what property can be taxed. Were we to stop reading subsection 8(g) after the first portion quoted above, MIG may be correct in this context. But the rest of subsection 8(g)'s plain language does more than that as it expressly says what *cannot happen* to the property assessed as personal property. And what cannot happen is this: property assessed as personal property cannot be "affected" by an assessment or tax levied on the real property where the personal property is located. MCL 211.8(g). "Black's Law Dictionary defines 'affect' as '[m]ost generally, to produce an effect on; to influence in some way.' " *Wardell v Hincka*, 297 Mich App 127, 132; 822 NW2d 278 (2012) (brackets in original) ("To ascertain the plain meaning of a term that is not defined by statute or court rule as is the case here given that the court rule does not define 'affecting,' this Court may consult a dictionary to determine the plain meaning of the term"), quoting *Black's Law Dictionary* (9th ed), p 65.

Here, it was the nonpayment of real estate taxes on the Gate Valve Site that ultimately triggered the foreclosure sale to MIG. Significantly, it is by virtue of this foreclosure sale that MIG claims that ownership to the South Suburban Pipeline changed. But this would mean that a real estate tax levied on the Gate Valve Site ultimately had an effect on the South Suburban Pipeline. This is *precisely* what Clause 1 prohibits. MCL 211.8(g).

Moreover, contrary to MIG's claim, Clause 1 is not dependent upon Clause 2 for its interpretation. Indeed, separating the two clauses is a comma and the conjunction, "nor." See *The Random House College Dictionary* (1988) (indicating "nor" is a conjunction). The Legislature's choice to separate Clause 1 and Clause 2 in this way is crucial to our interpretation of this statute, for we must construe statutory language in its grammatical context. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). In their proper grammatical context, then, Clause 1 and Clause 2 are independent of one another, since "a comma is used before a conjunction when it introduces an independent clause." *Badeen v PAR, Inc*, 300 Mich App 430,

445; 834 NW2d 85 (2013), citing Strunk & White, *The Elements of Style* (New York: Longman, 4th ed, 2000), p 5, vacated in part on other grounds 496 Mich 75 (2014). Clause 1 is therefore sufficient on its own to preserve MichCon's interest.

In any event, MIG's reading of Clause 2 hinges on defining the South Suburban Pipeline as a "fixture" under the common law,[2] and on restricting Clause 2's "other interest[s] in real property" to what MIG calls "uses of land." This is problematic for three reasons.

For starters, MCL 211.8(g) defines the components of the South Suburban Pipeline as personal property for purposes of assessment, and it is this type of property that Clause 1 protects from the effect of a tax levied on the real property irrespective of whether the South Suburban Pipeline would constitute a fixture under the common law. Accordingly, Clause 1 protects MichCon's interest independent of Clause 2.[3]

Second, assuming arguendo that the South Suburban Pipeline were a fixture, and thus part of the realty, Clause 2 still does not support MIG's interpretation.[4] Key to this conclusion is that the phrase "other interest[s] in real property"[5] is used twice in subsection 8(g). Only once is that phrase limited to any use of real property. But that limitation does not appear in Clause 2. Rather, it appears in the first portion of subsection 8(g) quoted above, which limits the "other interests in real property" to those used to erect and maintain the pipes (and certain appurtenances). MCL 211.8(g). Clause 2 lacks this limitation, however, and therefore we cannot interpret the "other interest in real property" of Clause 2 to be limited to "use" as MIG urges. The language, "other interest in real property" as used in Clause 2 therefore—without any qualifier—must encompass the realty, itself. Consequently, if, as MIG contends, the South

---

[2] See *Fane v Detroit Library Comm*, 465 Mich 68, 78; 631 NW2d 678 (2001) ("An item is a fixture if (1) it is annexed to realty, (2) its adaptation or application to the realty is appropriate, and (3) it was intended as a permanent accession to the realty.").

[3] MIG's reliance on *Ottaco, Inc v Gauze*, 226 Mich App 646, 654; 574 NW2d 393 (1997) is of no moment. In that case, the Court determined that the mobile home at issue, as a fixture, was part of realty sold at a foreclosure sale. *Id*. However, no statutory provision otherwise defined the mobile home as "personal property" and protected it from changing hands in a foreclosure sale like MCL 211.8(g) does here. Regardless, we are hard pressed to conclude that the South Suburban Pipeline constituted a fixture where MichCon paid personal property taxes on that pipeline throughout the duration of MIG's ownership of the Gate Valve Site. See *Continental Cablevision of Mich, Inc v City of Roseville*, 430 Mich 727, 743; 425 NW2d 53 (1988) (declining to rule that a cable company's equipment known as "house drops," constituted a fixture where, among other things, the company "carr[ied] house drops on its books as depreciable capital assets and [took] deductions for them on its federal and state income tax returns.").

[4] MichCon's lengthy argument that only real property is subject to foreclosure under the GPTA does not aid our analysis here. Indeed, the foundation of MIG's argument is that the South Suburban Pipeline is a fixture and is therefore considered part of the realty.

[5] That the word, "interest," appears both as a singular and a plural is of no consequence here.

Suburban Pipeline is a fixture and therefore part of the realty, it is an "interest in real property" that Clause 2 expressly exempts from a tax sale.

Finally, even if Clause 2 pertains only to "uses of land" as MIG maintains, MIG's interpretation of Clause 2 would again fail. On this point, it bears emphasis that the use of the South Suburban Pipeline is not at issue; the ownership of that personal property is. As MIG concedes, the settlement of MIG's claim under MCR 3.411(E) "dealt with MichCon's *use* of MIG's real property and MIG's personal property. *However, the payment is separate and distinct from the value of the personal property itself*." (First use of italics in original, second added.) Thus, assuming—as MIG does—that Clauses 1 and 2 refer to separate concepts, Clause 2 does not apply to the interest at stake. Therefore, under the framework MIG presents, Clause 2's specific prohibition regarding the affect of a tax sale would not otherwise limit the broad protection Clause 1 provides to the South Suburban Pipeline.[6]

## IV. CONCLUSION

The trial court correctly granted MichCon's motion for partial summary disposition because MCL 211.8(g) protected MichCon's interest in the South Suburban Pipeline from passing to MIG as a result of the foreclosure sale. We therefore affirm. No costs, a public question involved. MCR 7.219.


/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

---

[6] In light of this conclusion, MIG's request to remand for a determination of the value of the South Suburban Pipeline is moot.

-6-