*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELE A. FORBES,

      Petitioner-Appellant,

v

CITY OF ANN ARBOR,

      Respondent-Appellee.

UNPUBLISHED
May 11, 2023

No. 361648
Michigan Tax Tribunal
LC No. 21-002925-TT

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Petitioner appeals by right the final opinion and judgment entered by the Michigan Tax Tribunal (the Tribunal) setting her real property's true cash value (TCV), state-equalized value (SEV), and taxable value (TV) for tax year 2021. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts of this case are largely undisputed. Petitioner owns a residence within respondent's city limits (the property). In 2018, the home was damaged by fire, forcing petitioner and her family to leave their home. Petitioner and her homeowner's insurer did not agree regarding the amount of the loss and commenced an independent appraisal process—as described in MCL 500.2833(m)—to determine the amount of the loss.

In 2019, petitioner communicated with respondent's tax assessor about reducing the assessed 2019 property taxes, in light of the fire damage and the fact that the property was still uninhabitable. Petitioner submitted information to respondent's 2019 Board of Review (the Board) regarding the condition of the property, and requested that the assessed value (AV)[1] and TV of the property be reduced. The Board reduced the property's 2019 AV from $399,300 to $346,500 and the TV from $230,402 to $197,699. Petitioner was sent notice of the change in

---

[1]In this case, the AV and SEV for the property are equivalent, and the terms should be considered interchangeable.

valuation; the notice provided that the Board's action could be appealed to the Tribunal within 35 days. Petitioner did not appeal the Board's decision.

In March 2020, petitioner received a notice of assessment for the property, indicating that the TV of the property had increased to $201,455, and the AV was listed as $354,800. Petitioner did not protest the 2020 assessment with the Board.

In December 2020, the umpire in the appraisal dispute issued an appraisal award valuing the actual cash value of the "Dwelling Loss" caused by the fire at $419,282.50. On March 2021, respondent issued a notice of assessment for tax year 2021 listing the TV as $204,275 and the AV as $362,300. Petitioner protested the 2021 valuation with the Board, which upheld the original assessment. In July 2021, petitioner appealed the Board's decision to the Tribunal; the petition stated that petitioner was appealing the TV and AV assessed for the property for tax year 2021. In October 2021, petitioner moved the Tribunal for leave to amend her petition to add challenges to the property's valuation for tax years 2019 and 2020 on the basis that there was newly-discovered evidence, a clerical error, or a mutual mistake of fact. The Tribunal denied the motion, and denied reconsideration.

After receiving documentary evidence filed by both parties, the Tribunal issued a final opinion and judgment in March 2022. The Tribunal noted that petitioner argued that the 2021 Board had "completely disregarded the $419,282.50 fire loss" and that the TV of the property should be reduced to $113,974.34, with an AV of $205,458.75. The Tribunal noted that respondent had provided an appraisal using both a "revised cost-less-depreciation approach" and "a comparable sales approach" to valuation. The Tribunal noted, with regard to the comparable sales approach, that respondent had deducted $420,000, representing the approximate amount of the property's fire-damage loss, from the sales price of the comparable properties. Further, with regard to the revised cost approach, the Tribunal noted that the TCV of the land without any structures had been calculated by the appraiser at $389,400, based on comparable land sales where existing houses were demolished and new homes built; however, respondent had used the slightly lower value of $376,100 recorded on the 2021 Property Record Card for the property. Respondent had then applied "32% of physical depreciation" followed by "75% of abnormal physical depreciation" to the replacement cost of the home on the property, resulting in a "combined depreciation factor of 83%" and a TCV for the structure on the property of $177,292 after adjustment by the county's economic condition factor (ECF). The valuations produced by these two methods were reconciled to result in the property's TCV as $493,000 for tax year 2021, with an AV of $246,500. With regard to the property's TV, respondent's appraiser provided a "revised taxable value" of $136,683, which "recognizes 75% obsolescence."

The Tribunal addressed petitioner's continued argument that it should consider tax years 2019 and 2020, noting that the issue had already been resolved via motion. Further, the Tribunal noted petitioner's failure to challenge the 2019 and 2020 assessed values after receiving notices of assessment. The Tribunal then concluded that respondent's comparable sales approach was the most appropriate method of valuation and, while giving "some weight" to the revised cost approach, calculated the property's 2021 TCV as $495,000, with a resulting SEV of $247,500— nearly identical to respondent's proposed TCV and AV. The Tribunal went on to conclude, however, that the original TV that had been approved by the Board was correct; it declined to accept either petitioner's or respondent's proposed TVs that included some adjustment for physical

losses to the property, noting that the losses from the fire had occurred in 2018 and had been accounted for in the 2019 TV, which had not been appealed.

The Board-approved valuation, the parties' proposed valuations, and the Tribunal's ultimate valuation are summarized in the table below:

| **Tax Year 2021** | TCV | SEV/AV | TV |
|---|---|---|---|
| Board-approved valuation | $724,600 | $362,300 | $204,275 |
| Petitioner's proposed valuation | $376,200 | $205,458.75 | 113,974.34 |
| Respondent's proposed valuation | $493,000 | $246,500 | $136,683 |
| Tribunal's final valuation | $495,000 | $247,500 | $204,275 |

The tribunal denied petitioner's motion for reconsideration of its final opinion and judgment. This appeal followed.

## II. STANDARD OF REVIEW

As explained by our Supreme Court in *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006):

> The standard of review for Tax Tribunal cases is multifaceted. Where fraud is not claimed, this Court reviews the tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. [Quotation marks and citations omitted.]

"Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006). "Failure to base a decision on competent, material, and substantial evidence constitutes an error of law requiring reversal." *Id*.

We review de novo issues of statutory interpretation. *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008). We review for an abuse of discretion a trial court's decision on a motion to amend the pleadings, *Wormsbacher v Seaver Title* Co, 284 Mich App 1, 8; 772 NW2d 827 (2009), and on a motion for reconsideration, *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008). An abuse of discretion occurs when the trial court selects an outcome that falls outside the range of principled outcomes, or premises its decision on an error of law. *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022), slip op at 2.

### III. MOTION TO AMEND

Petitioner argues that the Tribunal erred by denying her motion to amend the petition to add claims related to tax years 2019 and 2020, and by denying her motion for reconsideration of that denial. We disagree.

Petitioner bases her argument on MCR 2.612(C), which provides that, under certain conditions, "the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding." Petitioner argues that this Court should apply this rule to the Tribunal proceedings at issue, because the Michigan Tax Tribunal Rules lack an equivalent rule. Petitioner is correct that, generally, if an applicable Tribunal rule does not exist, the equivalent court rule shall govern. See Mich Admin Code, R 702.10215 (TTR 215); see also *Signature Villas, LLC v City of Ann Arbor*, 269 Mich App 694, 705-706; 714 NW2d 392 (2006). However, petitioner ignores the fact that both the amendment of pleadings and motions for reconsideration are governed by specific Tribunal rules. Further, with regard to petitioner's motion to amend and motion for reconsideration, there was, at the time of the motion, no "final judgment, order, or proceeding" from which she could seek relief; petitioner's reliance on MCR 2.612(C) is, accordingly, misplaced.

TTR 221 governs the amendment of pleadings before the Tribunal, and provides in relevant part,

> A petition or answer may be amended or supplemented by leave of the tribunal only. *With the exception of amendments to include a prior or subsequent tax year assessment in property tax appeal*, leave to amend or supplement shall be freely given when justice so requires. Amendments to include a prior or subsequent tax assessment in a property tax appeal must be filed as required by law. See section 35a of the tax tribunal act, MCL 205.735a and section 53a of 1893 PA 206, MCL 211.53a. [Mich Admin Code, R 792.10221(1) (emphasis added).]

TTR 257 governs rehearing or reconsideration, and provides in relevant part: "The tribunal may order a rehearing or reconsideration of any decision or order upon its own initiative or the motion of any party filed within 21 days of the entry of the decision or order sought to be reheard or reconsidered." Mich Admin Code, R 792.10257(1).

MCL 205.735a governs the jurisdiction of the Tribunal, and provides that, unless certain exceptions (not relevant to this case) apply, "for an assessment dispute as to the valuation or exemption of property, the assessment must be protested before the board of review before the

tribunal acquires jurisdiction of the dispute." MCL 205.735a(3). Once the board of review has rendered a decision in an assessment dispute, the jurisdiction of the Tribunal may be invoked by a party in interest filing a written petition within 35 days after the final decision, ruling, or determination. MCL 205.735a(6).

The requirements of MCL 205.735a are jurisdictional in nature. See *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 547-548; 656 NW2d 215 (2002).[2] If an assessment for a particular tax year is not protested to the Board *and* appealed to the Tribunal via timely petition, the Tribunal lacks jurisdiction to consider challenges to that tax year. See *id*. at 548. As a statutory creation, the Tribunal lacks the equitable power to waive defects in its jurisdiction. *Id*. at 544, 547-548.

Under TTR 221(1), petitioner's requested amendments had to be "filed as required by law." Rule 792.10221(1). The record shows that, although petitioner protested the 2019 assessment to the Board, she did not file a written petition with the Tribunal within 35 days of the Board's decision. With regard to tax year 2020, petitioner failed to protest the assessment to the Board or file a written petition with the Tribunal. Because petitioner failed to invoke the jurisdiction of the Tribunal regarding those tax years, and the Tribunal lacked the equitable power to waive the jurisdictional requirements of MCL 205.735a, the Tribunal did not abuse its discretion by denying petitioner's motion to amend the petition to add claims concerning those tax years, as the Tribunal would have simply been required to dismiss those claims. *Electronic Data Sys Corp*, 253 Mich App at 544 (noting that "having determined that it has no jurisdiction, a court should not proceed further except to dismiss the action") (citations omitted). Similarly, the Tribunal did not abuse its discretion by denying petitioner's motion for reconsideration of that denial. *Id*.

## IV. VALUATION

Petitioner also argues that the Tribunal committed errors of law in valuing the property for tax year 2021, and that the Tribunal's decision was not supported by competent, material and substantial evidence. We disagree.

In an assessment dispute, the Tribunal has the duty to make an independent valuation determination; the Tribunal may not automatically accept the valuation on the tax rolls, even if a petitioner has failed to prove that the assessment was wrong. *President Inn Prop, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). The Tribunal is not required to select a particular valuation method, but has the "overall duty to determine the most accurate valuation under the individual circumstances of the case." *Id*.; see also *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389-390; 576 NW2d 667 (1998).

### A. TRUE CASH VALUE

The Tribunal determined that the TCV of the property for tax year 2021 was $495,000, with a resulting SEV of $247,500. Petitioner argues that the Tribunal erred by doing so, because

---

[2] Although *Electronic Data Sys Corp* discusses MCL 205.735, which governs tax years before 2007, its reasoning applies equally to MCL 205.735a, which governs tax years 2007 and later.

the Tribunal failed to appropriately account for the fact that the home on the property was uninhabitable and should have been valued at zero. We disagree.

TCV is synonymous with fair-market value and represents the "usual selling price of a given piece of property between a willing buyer and a willing seller." *Meadowlanes Ltd Div Housing Ass'n v City of Holland*, 437 Mich 473, 484; 473 NW2d 636 (1991). There are three traditional methods of determining TCV: (1) the cost-less-depreciation approach, (2) the sales-comparison (or comparable sales) approach, and (3) the capitalization-of-income approach. *Id*. at 485. When an appraiser uses multiple methods of valuation, the values derived from the various approaches should be correlated, reconciled, and weighed in order to reach a final estimated TCV. *Id*. at 485-486. "The ultimate goal of the valuation process is a well-supported conclusion that reflects the study of all factors that influence the market value of the subject property." *Id*. at 486.

Here, the Tribunal employed both the cost-less-depreciation approach and the sales-comparison approach in determining the property's TCV.[3] Petitioner does not argue that the Tribunal used a flawed methodology in calculating the property's TCV; rather, petitioner argues that under either approach, the fire damage to the property was not correctly taken into account. We disagree.

Regarding the sales-comparison approach, the Tribunal noted that in respondent's valuation, the comparable properties had their sale prices negatively adjusted by $420,000, slightly more than the full amount of the insurance appraisal award. The Tribunal adopted this approach in its own sales-comparison analysis. Essentially, this approach attempted to compare the sale of the property to sales of similar properties with similar homes that had suffered equivalent fire damage. Petitioner does not explicitly challenge this approach; however, because petitioner asserts that a home that has been damaged as severely as hers has no value, it can be inferred that she argues that the sale prices of the comparables should have been discounted by the entire value of the home on the property, not merely by the amount of the insurance award. Petitioner provides no authority for the proposition that a home that has incurred $420,000 in fire damage, or that is uninhabitable until significant damage is repaired, is *per se* valueless, and this Court has found none. Petitioner merely asserts that the home should be valued at zero dollars under any valuation method; another way of phrasing that assertion would be that the value of the loss from the damages was equivalent to the full value of the home. Despite petitioner's argument, an extensive independent appraisal process resulted in the valuation of the fire damage losses at $420,000. The Tribunal's decision to apply that amount as a negative adjustment to the sale prices of comparables was therefore supported by competent, material, and substantial evidence. *Wexford Med Group*, 474 Mich at 201.

Regarding the cost-less-depreciation approach, the Tribunal noted that respondent's calculation of both standard depreciation and "abnormal physical depreciation" from fire damage had resulted in the home being valued at 17% of its replacement cost. Petitioner argues that the home should have been valued at zero, and provides several examples of the damage the home

---

[3] The capitalization-of-income approach involves estimation of the present value of an income-producing property, and is not relevant to the valuation of owner-occupied residential real property. See *Meadowlanes Ltd Div Housing Ass'n*, 437 Mich at 485 n 20.

suffered in the fire. But petitioner provides no support for her assertion that the home was valueless beyond her statements that it was uninhabitable in tax year 2020 and required significant repairs. Petitioner herself even notes that the Michigan Assessor's Manual provides that a building that is "definitely unsound and practically unfit for use" can be valued from zero to 19% of the replacement cost. Respondent's depreciation calculation falls within that range, and petitioner merely asserts that, in this case, the value should have been zero. We agree with the Tribunal that petitioner has not established that "the house at the subject property has no value or is '0% good.' " The Tribunal noted that the umpire's statements in the appraisal award that, although significant repairs and replacements of systems were needed, portions of the home could be "repaired and cleaned without the removal of all walls, floors, tiles, tubs, sinks, etc." Viewing the record as a whole, petitioner has not established that the Tribunal erred to the extent that it adopted respondent's cost-less-depreciation approach. *Wexford Med Group*, 474 Mich at 201. Further, the Tribunal clearly stated that its conclusion was primarily based on applying the sales-comparison approach, which, as discussed, was supported by the record and was not an error of law. *Id*.

On review of the whole record, the Tribunal's determination of the property's TCV (and corresponding SEV) for tax year 2021 was supported by competent, material, and substantial evidence and was not an error of law. *Id*. Therefore, the Tribunal did not err by entering a final opinion and judgment to that effect, or abuse its discretion by denying petitioner's motion for reconsideration regarding those values. *Woods*, 277 Mich App at 630.

## B. TAXABLE VALUE

Petitioner also argues that the Tribunal erred by failing to account for losses from fire damage in calculating the TV of the property for tax year 2021. We disagree.

MCL 211.27a(2) provides that, for properties that have not been transferred in the previous calendar year,

the taxable value of each parcel of property is the lesser of the following:

(a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.

(b) The property's current state equalized valuation.

MCL 211.27a(2) effectively limits, or "caps," property tax increases when there has been no transfer of ownership; when a transfer of ownership occurs, the property is "uncapped" and the TV is set based on the property's SEV in the year following the transfer.

There was no transfer of ownership in this case, and no dispute that the TV of the property was less than the SEV; therefore, the parties and the Tribunal calculated the capped TV of the property using the method set forth in MCL 211.27a(2). Petitioner argues that the trial court erred by not interpreting the term "losses" to include damage to the home from the fire in 2018. We disagree.

-7-

For tax years after 1994, "losses" for the purposes of TV calculations are defined, in relevant part, as "property that has been destroyed or removed." MCL 211.34d(h)(*i*). "For purposes of determining the taxable value of property under [MCL 211.27a], the value of property destroyed or removed is the product of the true cash value of that property multiplied by a fraction, the numerator of which is the taxable value of that property in the immediately preceding year and the denominator of which is the true cash value of that property in the immediately preceding year." *Id*.

The purpose of statutory interpretation is to give effect to the intent of the Legislature. *Danse Corp v City of Madison Heights*, 466 Mich 175, 181; 644 NW2d 721 (2002). When statutory language is unambiguous, it must be applied as written. *Id*. This Court must presume that every word has meaning and, if possible, give effect to each provision. *Id*. When interpreting a statute, statutory language should be read reasonably and in context, including reading different subsections together. See *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

Petitioner argued before the Tribunal, and argues on appeal, that the true cash value of the losses to the subject property had not been determined until the appraisal award was issued in December 2020; therefore, the value of that loss, minus the amount already deducted as a loss from the TV calculated in tax year 2019, should have been deducted from the TV calculated for tax year 2021. Petitioner's proposed definition of "losses" is strained. It is clear that the gravamen of petitioner's claim is that the amount subtracted from the 2019 TV for fire loss was insufficient, as revealed by the appraisal award. This may well be the case; however, as stated, petitioner did not appeal the Board's decision in 2019 to the Tribunal (which she could have done before the appraisal award was issued), and the Tribunal therefore lacked jurisdiction to modify the assessments for that tax year. It is undisputed that the fire that caused the loss to the property occurred in 2018; the fact that the valuation of the loss by petitioner's insurer was not completed until 2020 does not change that fact. The language of various provisions of MCL 211.34d makes it clear that additions and subtractions from a property's capped TV are based on increases or decreases to the property's value that either occurred since the previous TV was calculated, or were erroneously not included in a previous assessment. See, e.g., MCL 211.34d(b)(*i*)-(*iv*) (defining "additions" as real or personal property that had not been included in a previous assessment, new construction that did not exist when the property was previously assessed, or property that was previously exempt from taxation that is now subject to taxation); MCL 211.34d(h)(*ii*) (defining "losses" as including "[p]roperty that was subject to ad valorem taxation under this act in the immediately preceding year that is now exempt from ad valorem taxation under this act). Moreover, the taxable value of a loss is calculated based on its taxable value and TCV for the "immediately preceding year." MCL 211.34d(h)(*i*).

Petitioner's argument that the Tribunal should have subtracted losses for the fire in 2018 when calculating the TV of the property for tax year 2021 is, in essence, a claim that the losses subtracted from the TV in tax year 2019 were insufficient. Petitioner's remedy was to challenge the Board's decision by petitioning the Tribunal to review it. The simple fact is that the fire occurred in 2018, and the losses were accounted for in the following year's assessment. Nothing happened in the year proceeding tax year 2021 to cause an additional loss of value to the property; to allow the Tribunal to nonetheless correct a perceived error from a previous tax year would be to invalidate the statutory requirements for invoking the Tribunal's jurisdiction. We decline to do so. The Tribunal did not err by calculating the property's capped TV for tax year 2021 without

subtracting losses for fire damage that petitioner did not timely protest in an earlier tax year. *Liberty Hill Housing Corp*, 480 Mich at 49.

## C. PETITIONER'S REMAINING CLAIMS

Petitioner also argues that the Tribunal erred by calculating the TCV and TV of the property in the manner discussed, or by denying her motion for reconsideration, for several other reasons. These include (1) that respondent based its 2019 recommendation to the Board concerning the amount of fire damage losses on an exterior-only inspection of the home, (2) that that same recommendation was based on respondent's erroneous determination that the house was "75% functional" after the fire, and (3) that respondent allegedly altered the 2021 Property Record Card for the property to remove a reference to this "75% functional" conclusion. The first two arguments concern the 2019 assessment and the Board's decision regarding the 2019 tax year, which, again, petitioner did not appeal. As for the third allegation, even if true, petitioner has not explained how this alteration affected the Tribunal's independent valuation determination; again, the Tribunal was not at liberty merely to accept the valuation on the tax rolls, and, indeed, did not do so in this case. *President Inn Prop, LLC*, 291 Mich App at 631. Petitioner's arguments concerning respondent's conduct or alleged conduct lack merit.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates