GOINS v GREENFIELD JEEP EAGLE, INC

Docket No. 98440. Argued April 4, 1995 (Calendar No. 9). Decided June 6, 1995.

Ruby Goins brought an action in the Wayne Circuit Court against Greenfield Jeep Eagle, Inc., alleging that because the dealership failed to verify the existence of a purchaser's motor vehicle insurance, it remained liable, as an owner, for the negligent operation of that vehicle. The court, Marianne O. Battani, J., granted summary disposition for the defendant. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and GRIBBS and SAWYER, JJ., reversed in an unpublished opinion per curiam (Docket No. 141584). The defendant appeals.

In a unanimous opinion by Justice RILEY, the Supreme Court held:

The dealer did not remain liable as an owner of the vehicle. Although the defendant was compelled to apply to the Secretary of State for a new certificate of title, it was not, under the law, required to verify the purchaser's insurance coverage by sending in a copy of his insurance for that vehicle.

1. An automobile dealership can effectuate a transfer of ownership of a vehicle by complying with MCL 257.217(2); MSA 9.1917(2). Transfers become official when either an application for title has been executed or an actual certificate of title has been issued, relieving the dealer of any liability associated with the use of the vehicle. Neither the Vehicle Code nor the no-fault act requires a dealer to verify the insurance coverage of a purchaser or submit a copy of the purchaser's insurance coverage. The duty to supply a copy of the purchaser's insurance coverage, found in a manual issued by the Secretary of State to all dealerships, was never properly promulgated as a rule. Thus, it could not have the force of law, and the defendant's failure to follow its procedures did not prevent the transfer of ownership. Title transfers when there has been an execution of either the application for title or the certificate of title. In this case, both occurred.

2. The Court of Appeals erred when it found that the defendant was the owner of the vehicle at the time of the accident. The Vehicle Code simply requires a dealer to fill out the proper application for a certificate of title and to submit it to the

Secretary of State within fifteen days. The defendant timely performed these acts, and the Secretary of State issued a certificate of title, registration, and license plate to the purchaser. Although the defendant did not verify the purchaser's insurance coverage by acquiring and sending a copy of it, that was not required under the Vehicle Code. Thus, there was no genuine issue with respect to the defendant's liability.

Reversed.

*William E. Matz* for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman* and *Colin H. John, Jr.*), for the defendants.

Amicus Curiae:

*Colombo & Colombo* (by *Lawrence F. Raniszeski* and *Patrick J. Ennis*) for the Detroit Auto Dealers Association.

RILEY, J. In this case, we are called on to determine whether an automobile dealership that fails to verify the existence of a purchaser's motor vehicle insurance remains liable, as an owner, for the negligent operation of that vehicle. Specifically, we must decide whether defendant Greenfield Jeep Eagle remained the owner of a 1989 Eagle Medallion when it sold the vehicle to Jerome Parker and failed to send a copy of Parker's insurance coverage to the Secretary of State. We conclude that under the present Vehicle Code, defendant did not remain liable as an owner of the vehicle. While it is true that defendant was compelled to apply to the Secretary of State for a new certificate of title, it was not, under the law, required to verify Parker's insurance coverage by sending a copy of his insurance for that vehicle. The Secretary of State transferred title, and defendant was removed from liability.

I

On September 1, 1988, John Griffin, a salesman for Greenfield Jeep Eagle, sold a 1989 Eagle Medallion to Jerome Parker. In accordance with general procedure, Parker signed an RD-108 Application for Title. On the application, Parker indicated Farmers Insurance Company as his no-fault carrier. This statement, however, was fraudulent. Neither Farmers nor any other company had insured this vehicle.

On September 8, 1988, the Secretary of State received the application. Within one day, the Secretary of State issued a certificate of title, a license plate, and a vehicle registration to Jerome Parker. Unfortunately, three days later, on September 10, 1988, Parker, while driving drunk, struck plaintiff Ruby Goins, causing her serious injury. She filed suit against Parker, and on October 4, 1989, was awarded a default judgment in the amount of $250,000. Goins, however, never collected on the judgment because Parker filed for bankruptcy in June of 1990.

On August 10, 1990, the instant lawsuit was filed in Wayne Circuit Court. Plaintiff alleged that defendant was the owner of the vehicle at the time of the accident and as a result was liable for her injuries. On March 27, 1991, defendant moved for summary disposition, which was granted. Plaintiff motioned for reconsideration, which was denied on May 14, 1991. Plaintiff then appealed as of right in the Court of Appeals, which reversed.[1] Defendant petitioned this Court for leave to appeal, and the application was granted.[2]

[1] Unpublished opinion per curiam, issued September 22, 1993 (Docket No. 141584).

[2] 447 Mich 1013 (1994).

II

Defendant was granted summary disposition in accordance with MCR 2.116(C)(10), which provides, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." It is well accepted that when reviewing such a motion, we "consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). The moving party is entitled to judgment as a matter of law only if there is no genuine issue of any material fact. *Stevens v McLouth Steel Products Corp,* 433 Mich 365; 446 NW2d 95 (1989).

We conclude that summary disposition was appropriate. Defendant's liability turns on whether it was the owner of the vehicle at the time of the accident. MCL 257.401; MSA 9.2101 provides:

> The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of the motor vehicle whether the negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in the operation of the motor vehicle as the rules of the common law requires.

An "owner" is defined under MCL 257.37; MSA 9.1837 as:

> (a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.
>
> (b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.

(c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

In *Basgall v Kovach,* 156 Mich App 323, 327; 401 NW2d 638 (1986), the Court of Appeals had an opportunity to interpret what is meant by the term "owner."

Our Court has consistently held that the definition of owner as used in the Michigan Vehicle Code must be broadly construed to include persons who (1) have exclusive control over the vehicle for at least thirty days, (2) are named on the legal title of the vehicle, or (3) are conditional vendees, lessees or mortgagors with immediate right to possession. *Peters v Dep't of State Highways,* 66 Mich App 560, 564-565; 239 NW2d 662 (1976). There may be several owners of a motor vehicle, within the meaning of the Michigan Vehicle Code, with no one owner possessing "all the normal incidents of ownership." *Messer v Averill,* 28 Mich App 62, 65, n 2; 183 NW2d 802 (1970).

It is important to stress, however, that ownership is not cast in stone. It can be transferred. An automobile dealership can effectuate such a transfer by complying with the necessary steps provided in MCL 257.217(2); MSA 9.1917(2).

A dealer selling or exchanging vehicles required to be titled, within 15 days after delivering a vehicle to the purchaser . . . shall apply to the secretary of state for a new title, if required, and transfer or secure registration plates and secure a certificate of registration for the vehicle . . . in the name of the purchaser. . . . The purchaser of the vehicle . . . shall sign the application . . . and other necessary papers to enable the dealer . . . to secure the title, registration plates, and transfers from the secretary of state.

These transfers become official when either the application for title has been executed or the actual certificate of title has been issued.

> Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle shall be the date of execution of either the application for title or the certificate of title. [MCL 257.233(5); MSA 9.1933(5).]

If a transfer is successful, then the dealer, as the previous owner, will be relieved of any liability associated with the use of that vehicle.

> The owner of a motor vehicle who has made a bona fide sale by transfer of his title or interest and who has delivered possession of such vehicle and the certificate of title thereto properly endorsed to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another. [MCL 257.240; MSA 9.1940.]

In the instant case, the Court of Appeals examined the dealer's actions in order to determine if a proper transfer occurred.

> . Here, Jeep Eagle allegedly failed to comply with specific instructions in the dealer's manual regarding retailing a new vehicle, improperly completed a required form, and submitted false information about an essential matter to the Secretary of State. The false information caused the Secretary of State to issue a title to Parker that it was prohibited from issuing under the statute. We believe the allegations in this case are sufficient to create a question of fact regarding whether the attempted transfer of title in this case actually transferred ownership of the vehicle from Jeep

Eagle to Parker. Accordingly, summary disposition was improperly granted. [Unpublished opinion per curiam, issued September 22, 1993 (Docket No. 141584).]

A

With all respect, we are persuaded that the Court of Appeals came to the wrong conclusion. While it is true that "[t]he mandates of the Michigan Vehicle Code must be followed and our Courts have been adamant in their refusal to sanction anything less than strict compliance," *Messer, supra* at 66, nowhere in the Vehicle Code is it required that a dealer verify the insurance coverage of a buyer or submit a copy of the purchaser's insurance coverage. The no-fault act does require a purchaser to supply proof of insurance when receiving registration, but there is no mention that a dealer has such a responsibility.

> An insurer, in conjunction with the issuance of an automobile insurance policy, as defined in section 3303, shall provide 2 certificates of insurance to each policyholder. The insurer shall mark 1 of the certificates as the secretary of state's copy, which copy shall be filed with the secretary of state by the policyholder upon application for a vehicle registration. [MCL 500.3101a; MSA 24.13101(1).]

Plaintiff contends that defendant's duty to supply a copy of the purchaser's insurance coverage can be found in a manual that is issued by the Secretary of State to all automotive dealerships.

> [T]he dealer must take the following to the Secretary of State branch office within 15 days after delivery of the vehicle:

(1) the completed RD-108.

(2) the M.C.O., assigned Certificate of Title, or other ownership document.

(3) proof of insurance, if a registration plate is being purchased.

(4) sales tax.

(5) title and registration fees.

Thus, plaintiff maintains that for proper title to have been issued by the Secretary of State, defendant had to submit a copy of the vehicle's proof of insurance as required by this manual. In order for this requirement to have the force of law, however, it has to fall under the definition of a properly promulgated rule. As this Court said in *Clonlara v State Bd of Ed,* 442 Mich 230, 239; 501 NW2d 88 (1993), if a rule is properly promulgated, then it adopts the force and effect of law.

> Rules adopted by an agency in accordance with the APA have the force and effect of law. They must be promulgated in accordance with the procedures set forth in the APA, and are not valid if those procedures are not followed. [*Id.*]

Specifically, a "rule" is defined as

> an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission thereof, but does not include any of the following:
>
>              \*     \*     \*
>
> (h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory. [MCL 24.207; MSA 3.560(107).]

The Secretary of State has the power to promulgate such rules.

> The secretary of state may promulgate rules pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, necessary to administer this act. [MCL 257.204(2); MSA 9.1904(2).]

MCL 24.246; MSA 3.560(146) specifically provides for the actual manner of promulgation.

> Except for a rule processed pursuant to section 44(2), to promulgate a rule an agency shall file in the office of the secretary of state 3 copies of the rule bearing the required certificates of approval and adoption and true copies of the rule without the certificates. An agency shall not file a rule, except an emergency rule under section 48, until at least 10 days after the date of the certificate of approval by the committee or after the legislature adopts a concurrent resolution approving the rule. An agency shall transmit a copy of the rule bearing the required certificates of approval and adoption to the office of the governor at least 10 days before it files the rule.

Before such a rule can be adopted, notice must be given to the public.

> Except as provided in section 44, before the adoption of a rule, an agency shall give notice of a public hearing and offer a person an opportunity to present data, views, questions, and arguments. The notice shall be given within the time prescribed by any applicable statute, or if none, in the manner prescribed in section 42(1). [MCL 24.241; MSA 3.560(141).]

A failure to follow these procedures, however, will prohibit a rule from having the force of law.

> When promulgating rules, an agency must fol-
> low specified statutory procedures that include
> various notice and public hearing requirements.
> See MCL 24.231-24.264; MSA 3.560(131)-3.560(164).
> Failure to substantially comply with the proce-
> dural requirements renders the rule invalid. [*Pyke
> v Dep't of Social Services,* 182 Mich App 619, 629;
> 453 NW2d 274 (1990).]

In the present case, the Secretary of State never properly promulgated the rules set forth in this manual. Moreover, there is no evidence that copies of it were filed with the Secretary of State or that notice was ever given. Because it was never properly promulgated as a rule, it could not have had the force of law. At best, the manual was merely "[a] form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h); MSA 3.560(107)(h).

**B**

Hence, defendant's failure to follow this non-promulgated requirement within the informational manual did not prevent the transfer of ownership. This conclusion is further reinforced by the fact that "the courts have been reluctant to find lesser defects, even those involving statutory violations, fatal to the transfer of ownership." *Allstate Ins Co v Demps,* 133 Mich App 168, 174; 348 NW2d 720 (1984). For example, in *Schomberg v Bayly,* 259 Mich 135; 242 NW 866 (1932), the Court found that a late filing of a certificate of title did not prevent the transfer of ownership even though it occurred beyond the statutorily required period. In that case, an automotive dealership sold a used car on May 27, 1923, without its certificate of title. On

June 20, the dealer received the certificate of title and filed it with the Secretary of State. Four days later, the vehicle was involved in an accident that injured the plaintiff. The plaintiff claimed that the transfer by the dealer was invalid because the certificate of title was not transferred within the required ten-day period. This Court found for the defendant, stating that substantial compliance with the transfer requirements had occurred so as to effectuate the transfer.

> Such delivery direct to the secretary of State, instead of to the purchaser, accomplished the statutory purpose, and was substantial, if not literal, compliance with the law. . . .
> If the sale of a motor vehicle is otherwise effected, title thereto passes, and the sale becomes fully consummated, upon delivery of the certificate of title properly executed. Until delivery of the assigned certificate, title does not pass, and no sale results; but delivery of the certificate of title properly assigned, notwithstanding such delivery is belated, passes title and consummates the sale. [*Id.* at 138-139.]

In *Long v Thunder Bay Mfg Corp,* 86 Mich App 69; 272 NW2d 337 (1978), the defendant delivered a motor vehicle with an assignment of title, but failed to remove the license plates as required by statute. The vehicle was then involved in an accident. The plaintiff maintained that the defendant remained the owner of the vehicle because it had failed to remove the plates. The Court of Appeals held:

> Defendant Thunder Bay Manufacturing Corporation made a bona fide sale to defendant Rice and delivered possession of the vehicle and the certificate of title properly endorsed. Therefore, under the statute, defendant Thunder Bay was not liable

for damages resulting from negligent operation by another. [*Id.* at 70.]

Finally in *Zechlin v Bridges Motor Sales,* 190 Mich App 339; 475 NW2d 60 (1991), the Court of Appeals found that the improper registration of a vehicle did not prevent the transfer of ownership.

> Under § 37, the vehicle's registration does not implicate ownership. It is, in most instances, the transfer of title that signifies the transfer of vehicle ownership . . . . In other words, dealer compliance with the registration provisions of the Vehicle Code is not a sine qua non for transfer of ownership. [*Id.* at 342.]

*Zechlin* is particularly on point because the dealer manual, in the present case, only requires "proof of insurance, if a registration plate is being purchased." Because complete compliance with the actual registration provisions of the Vehicle Code is not required for the transfer of ownership, we conclude that compliance with an informational manual need not be compelled.

While ownership was found to transfer in *Schomberg, Long,* and *Zechlin,* it has been found to not transfer in others. In *Gazdecki v Cargill,* 28 Mich App 128, 131; 183 NW2d 805 (1970), the Court held that ownership did not transfer where a car had been sold and delivered, but no change in title had been filed.

> The issue, as framed, requires this Court to determine if the title of an automobile passes from a licensed automobile dealer to a prospective purchaser, where the dealer has received only a deposit on the automobile, delivers the auto with the dealer plates attached, and with no written evidence of sale.
> The trial court's interpretation—holding that

the legal title of the automobile passed on delivery of the vehicle—was in error. Something more must be done by an automobile dealer to transfer ownership of an automobile to a prospective purchaser.

Similarly, in *Basgall, supra,* title was never formally changed. In that case, a woman divorced her husband, and, as part of the divorce settlement, the husband was awarded the car that they both owned. The certificate of title for this vehicle, however, was never changed. Thus, both their names remained on the title. This car was then involved in an accident, and the plaintiff named the woman in the suit. She argued that she should be removed from the suit because she no longer owned the vehicle. The Court, however, found that a proper transfer never occurred even though the divorce judgment was entered.

Defendant admits that she failed to transfer title to her former husband following entry of the divorce judgment. We thus conclude that the trial court erred as a matter of law in finding that defendant was not an owner of the 1979 Monza under the Michigan Vehicle Code. [*Id.* at 327.]

In *Michigan Mut Ins Co v Reddig,* 129 Mich App 631, 635; 341 NW2d 847 (1983), the Court found that a sale of a motor vehicle without an accompanying certificate of title prevented a valid transfer of the vehicle.

Consequently, we hold that, at the time of the accident, a sale of a motor vehicle which did not include a transfer of the certificate of title as required by the statute was void. Under such circumstances, the seller remained the owner.

*Gazdecki, Basgall,* and *Reddig* all demonstrate

how important the transfer of title is to the transfer of ownership. Title transfers when there has been an "execution of either the application for title or the certificate of title." MCL 257.233(5); MSA 9.1933(5). In the present case, both occurred. The application for title was executed when defendant sent the necessary forms to the Secretary of State, and the certificate of title was executed when the Secretary of State issued a new certificate in the purchaser's name. Thus, if a failure to follow the Motor Vehicle Code in a situation like this would not prevent the transfer of ownership, then the failure to follow the instructional manual is not sufficient either. Title was transferred and defendant no longer remained liable as the owner of the vehicle.

### CONCLUSION

The Court of Appeals erred when it found that defendant was the owner of the vehicle at the time of the accident. The Motor Vehicle Code simply requires a dealer to fill out the proper application for a certificate of title and to submit it to the Secretary of State within fifteen days. In the present case, defendant performed all these acts within the requisite amount of time, and the Secretary of State issued a certificate of title, registration, and license plate to the purchaser. Although defendant did not verify Parker's insurance coverage by acquiring and sending a copy of his insurance certificate, this act was simply not required under the Vehicle Code. While the manual requires a dealer to submit a copy of the purchaser's insurance to the Secretary of State, it was never properly promulgated and did not have the force of law.[3] Thus,

---

[3] Moreover, because many statutory violations of the Vehicle Code

we conclude that there was no genuine issue with respect to defendant's liability. We reverse the Court of Appeals decision and reinstate the trial court's grant of summary disposition for defendant.

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, MALLETT, and WEAVER, JJ., concurred with RILEY, J.

have been found *not* to prevent the transfer of ownership, we are persuaded that this violation of a purely informational manual did not prevent the transfer either.