JULIA SMITH GIBBONS, Circuit Judge.
While Glen Galemmo was under investigation for a Ponzi scheme and the government had begun seizing his assets, he transferred 30 units in Rugged Power Investments (RPI) to his wife, Kristine Gal-emmo. Mr. Galemmo had purchased these units using proceeds from his fraud. The RPI membership agreement included a provision that gave shareholders the right to buy additional units if the partnership decided to raise capital by issuing new shares. Mrs. Galemmo, with funds provided by her father-in-law, used these' preemptive rights to buy 15 additional units of RPI.
After the district court issued a preliminary order of forfeiture for all 45 units of RPI and their associated distributions, the government and Mrs. Galemmo cross-moved for summary judgment. The district court granted the government’s motion as to the 45 shares, finding that the original 30 units related back to the government as the proceeds of fraud. The district court also held that the additional 15 units, procured through shareholder rights that belonged to the government through the relation-back doctrine, related back to the government. Mrs. Galemmo now appeals the district court’s order as to the 15 units and their distributions. Because Mrs. Gal-emmo lacks superior title to the 15 units and is not a bona fide purchaser for value, we affirm.
I.
The relevant facts are not in dispute. Glen Galemmo pled guilty to wire fraud, in violation of 18 U.S.G, § 1343, and money laundering, in violation of 18 U.S.C. §. 1956, and as part of that agreement, the district court ordered him to forfeit certain property. That property included “45 units or shares of Rugged. Power Investments, LLC (“RPI”) currently issued to Kristine Galemmo,” The court had previously entered a preliminary order of forfeiture of these 45 shares and the profits due to Mrs. Galemmo as a result of her membership interest in RPI.
Mr. Galemmo and two partners founded RPI in May 2013. PSIF, LLC, a company Mr. Galemmo formed and of which he was the sole member, purchased 30 membership units of RPI, giving him a 30% ownership interest in the company. Mr. Galem-mo, through PSIF, bought the 30 units of RPI using proceeds from his fraud. PSIF transferred its shares in RPI to Mrs. Gal-emmo on July 7, 2013, a few days after a magistrate judge signed a warrant authorizing the seizure of funds in Mr. Galem-mo’s bank accounts.
The RPI partnership agreement included a provision that gave unit holders the right to buy additional units if the partnership decided to raise capital by issuing new shares. In November 2013, RPI decided to raise new capital, and pursuant to the shareholder rights provision in the partnership agreement, Mrs. Galemmo purchased 15 additional units in order to maintain her 30% interest in RPI, giving her a total of 45 shares in RPI. She bought the additional shares using funds she obtained from her father-in-law.
Mrs. Galemmo challenged the forfeiture of the 45 RPI shares and the related distributions, arguing that she is the owner of the RPI units and a bona fide purchaser of 15 of the shares. After discovery, Mrs. *296 Galemmo and the government cross-moved for summary judgment.
The district court held that title to the original 30 shares of RPI and their distributions relate back to the government. It also held that Mrs. Galemmo did not establish superior title to the 15 units or her status as a bona fida purchaser for value. On the question of superior title, the court reasoned that because title to the 30 units and their attendant rights relate back to the government, Mrs. Galemmo never had the right to purchase the additional 15 units under the partnership agreement. Similarly, Mrs. Galemmo was not a bona fide purchaser for value because, although she did give value for the shares, she had reason to believe that they were subject to forfeiture. The court pointed to a number of facts in the record to support this conclusion: (1) the provision in the assignment agreement that it would be deemed null and void if the government demanded a reversal of the assignment of the 30 shares to Mrs. Galemmo; (2) Mr. Galemmo’s contemporaneous transfer of other assets into Mrs. Galemmo’s name; (3) Mrs. Galemmo’s opening and closing of bank accounts and moving money in and out of them; (4) Mrs. Galemmo’s admission that she was concerned about the government seizing her husband’s assets.
II.
Mrs. Galemmo appeals the district court’s ruling that, as a matter of law, she lacked superior title to the 15 units of RPI and their associated distributions and was not a bona fide purchaser for value under 21 U.S.C. § 853(n)(6). She argues that because she bought the 15 shares with innocent funds and had no reason to believe they would be subject to forfeiture when she made the purchase, § 853(n)(6)’s exceptions to the criminal forfeiture statute apply. We review a district court’s grant of summary judgment in a forfeiture case de novo, viewing all facts in the light most favorable to the non-movant. United States v. $5000.00 in U.S. Currency, 40 F.3d 846, 848 (6th Cir. 1994).
The criminal forfeiture statute defines “property” broadly as including “tangible and intangible personal property, including rights, privileges, interests, claims, and securities.” 21 U.S.C. § 853(b). The statute provides that all right, title, and interest in property subject to forfeiture “vests in the United States upon the commission of the act giving rise to forfeiture under this section.” Id. § 853(c). This means that “[ajfter the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government.” United States v. Huntington Nat. Bank, 682 F.3d 429, 433 (6th Cir. 2012) (quoting United States v. Harris, 246 F.3d 566, 575 (6th Cir. 2001)).
Two exceptions to the relation-back clause protect certain innocent third parties. Id.- A third party can obtain relief from forfeiture if she establishes by a preponderance of the evidence that she has an interest in the forfeitable property that is “superior” to that of the government or that she was a “bona fide purchaser for value.” 21 U.S.C. § 853(n)(6); United States v. Huntington Nat. Bank, 574 F.3d 329, 330 (6th Cir. 2009) (citation omitted). Mrs. Galemmo argues that both the superior interest and bona fide purchaser exceptions apply to the 15 units of RPI.
A.
To obtain relief under the superior title exception, Mrs. Galemmo must show that her interest in the property is superi- or to the government’s interest at the time of the commission of the act giving rise to the forfeiture, the moment when the government “step[ped] into [Mr. Galemmo’s] *297 shoes.” Harris, 246 F.3d at 575 (quoting United States v. Lavin, 942 F.2d 177, 185-86 (3d Cir. 1991)); see 21 U.S.C. § 853(n)(6)(A). She cannot make this showing.
Under the relation-back doctrine, • the government acquired its interest in the original 30 units of RPI when Mr. Galem-mo used proceeds from his fraud to establish RPI in May 2013. 21 U.S.C. § 853(c). Thus, the government stepped into Mr. Galemmo’s shoes as soon as he obtained these shares, which necessarily predated his transfer of them to Mrs. Galemmo. When the government obtained title to the original 30 shares, it also gained all of the ownership rights that came with those shares, including the right to purchase additional units. Under Ohio law, which determines the nature of the property interests here, and the broad definition of “property” in the criminal forfeiture statute, preemptive rights are a property interest. 21 U.S.C. § 853(b) (defining property as “including rights, privileges, interests, claims, and securities”); Harris, 246 F.3d at 571 (noting that state law determines the nature of property interest's in federal forfeiture proceedings); see Schafer v. Deszcz, 120 Ohio App.3d 410,698 N.E.2d 60, 62 (1997) (observing, in the real property context, that preemptive rights are property interr ests). Mrs. Galemmo exercised these preemptive rights in purchasing the additional 15 units, but these rights belonged to the government, not her. She thus cannot establish superior' title to these units because she did not have the right to buy them.[1]
B.
To prove she is a bona fide purchaser for value, Mrs. Galemmo must show two things: (1) she is a “bona fide purchaser for value of the ... interest in the property”; and (2) the interest was acquired at a Time when the claimant was “reasonably without cause to believe that the property was subject to forfeiture.” 21 U.S.C. § 853(n)(6)(B); Groza-Vance v. Vance, 162 Ohio App.3d 510, 834 N.E.2d 15, 28 (2005). With regard to the second prong, the relevant question “is not whether the petitioner actually believed that the property was subject to forfeiture.” United States v. Coffman, 612 Fed.Appx. 278, 287 (6th Cir. 2015). Mrs. Galemmo cannot show by a preponderance of the evidence that she was reasonably without cause to believe that the 15 shares were subject to forfeiture, and for that reason, we do not address the first prong.
In Coffman, we found that a claimant company had not established by a preponderance that it was reasonably without cause to believe a yacht was subject to forfeiture. Id. We considered “the red flags around [the defendant’s] financial status” at the time of the purchase, including a subpoena of his financial records and the transfer of jointly héld property into his spouse’s sole possession. Id. We also noted the unusual circumstances regarding how the funds for the yacht ware obtained. Id. .
Here, though the funds for the purchase of the 15 RPI units came from Mrs. Gal-emmo’s father-in-law, she still had cause to believe that these shares were subject to forfeiture. As in Coffman, it was clear that Mr. Galemmo was under investigation, as many assets had already been seized, including Mrs. Galemmo’s bank accounts. Mr. Galemmo also transferred vehicles, ti- *298 tied in his name to Mrs. Galemmo. Finally, Mrs. Galemmo indicated her awareness of the “red flags” around her husband’s financial status by opening and closing new bank accounts, moving funds back and forth between these accounts, and requesting that RPI put the units from Mr. Gal-emmo in the name of a trust. Though Mrs. Galemmo’s affidavit asserts that she “did not believe, nor did [she] have reason to believe, that the 15 units of RPI [she] purchased would be subject to forfeiture,” the relevant standard is not actual knowledge. Coffman, 612 Fed.Appx. at 287. Rather, Mrs. Galemmo must show by a preponderance of the evidence that she was “reasonably without cause” to believe the 15 units would be subject to forfeiture at the time she purchased them. 21 U.S.C. § 853(n)(6)(B). Because of the red flags around the Galemmos’ finances, Mrs. Gal-emmo had reason to believe the 15 RPI units were subject to forfeiture, and she cannot qualify as a bona fide purchaser for value.
C.
The concurring opinion raises a number of potentially valid points but addresses arguments that Mrs. Galemmo has not made and to which the-government has not responded. Given this situation, we choose not to wade into the concurring opinion’s observations about the case.
III.
For the foregoing reasons, we affirm the district court’s grant of summary judgment to the government regarding the 15 units of RPI and the related distributions.

. As the district court noted, the $45,000 Mrs. Galemmo borrowed to purchase the additional 15 RPI units is not subject to forfeiture.