NOT RECOMMENDED FOR PUBLICATION

File Name:  20a0144n.06

Case No. 19-1619

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **FILED** |
| | ) | Mar 11, 2020 |
| Plaintiff - Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| NICHOLAS MALINOWSKI, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

**BEFORE: SUTTON, BUSH, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.**  In accordance with a criminal forfeiture order, Joseph Roe forfeited to the government a 2014 Corvette in his possession.  Roe's son, Nicholas Malinowski, challenged the forfeiture, claiming an interest in the Corvette superior to the government's interest.  The district court denied Malinowski's claim, holding that he could not establish a property interest in the Corvette under Michigan law.  Seeing no error in the district court's judgment, we **AFFIRM.**

**BACKGROUND**

Following Joseph Roe's guilty plea to a drug trafficking offense, the district court was called upon to interpret various provisions of the forfeiture statute applicable to federal drug crimes, 21 U.S.C. § 853.  Two of those provisions, 21 U.S.C. §§ 853(a) and (b), require a criminal defendant convicted of a drug crime punishable by imprisonment for more than a year to forfeit to

the government the proceeds and instrumentalities of the crime, including real or personal property. On that basis, the district court ordered Roe to forfeit to the government a 2014 Corvette, a vehicle he was believed to own.

Another statutory provision, 21 U.S.C. § 853(n), authorizes a third party who "assert[s] a legal interest in property which has been ordered forfeited" to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Section 853(n) identifies two alternative grounds upon which a claimant can establish an enforceable claim: one, the claimant has a superior interest to the government; or two, the claimant was a bona fide purchaser of the property. Through the filing of a § 853(n) petition, Malinowski commenced an ancillary proceeding to recover the Corvette under a "superior interest" theory. According to Malinowski, the vehicle always belonged to him, and was never owned by Roe. The vehicle's title was kept in Roe's safe, Malinowski explained, due to Malinowski's "then-existing medical issues." And although Malinowski's name did not appear in the title, he claimed to have procured the vehicle from the owner listed on the title.

The government moved to dismiss the ancillary proceeding. In response, Malinowski sought to amend his petition to add details as to how he acquired the Corvette, claiming that he purchased it with $54,000 of legitimate funds and did not sign the title application because he intended to re-sell the Corvette for a profit. Malinowski also proposed to add a claim that he was a bona fide purchaser of the Corvette.

Viewing the request to amend as one governed by its discretionary authority, the district court denied as untimely Malinowski's request to add his proposed bona fide purchaser claim. The district court did, however, allow Malinowski to amend his petition to add details as to how he acquired the Corvette. Yet even then, the district court held, Malinowski failed to allege a

cognizable ownership interest in the Corvette. Malinowski did not sign the title application, nor did he establish other indicia of ownership under Michigan law. Accordingly, the district court dismissed the proceeding and denied Malinowski's motion to amend as futile. Malinowski timely appealed.

## ANALYSIS

To establish statutory standing to pursue a third-party claim under § 853(n), Malinowski must demonstrate a "facially colorable interest" in the seized Corvette. *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (citations omitted). Whether a colorable interest exists is measured by reference to state law. *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001) (applying Ohio mortgage law in a § 853(n) ancillary proceeding); *see United States v. Monea Family Tr. I*, 626 F.3d 271, 277 (6th Cir. 2010) (applying Ohio gift law to determine if claimant had statutory standing for a § 853(n) ancillary proceeding). At this stage, we, as did the district court, assume that all facts alleged in the petition are true, *Salti*, 579 F.3d at 667, and we review the district court's standing determination *de novo*. *Id.*

1. Under Michigan law, "compliance with the MVC [Motor Vehicle Code] is the exclusive means of transferring ownership of vehicles." *In re Ambrose-Burbank*, 563 B.R. 820, 826 (Bankr. E.D. Mich. 2017) (collecting Michigan cases). The most straightforward way to demonstrate ownership under the MVC is to sign a title application for the vehicle. *See* Mich. Comp. Laws § 257.233(9) (explaining that the effective date of title transfer is the date the intended transferee signs a title application). Malinowski, however, failed to sign the title application for the Corvette, apparently because he "hoped to immediately resell the Corvette at a profit on Craigslist." Under Michigan law, that omission defeats Malinowski's claim to ownership through a title theory. Mich. Comp. Laws § 257.233(9); *see In re Forfeiture of 2000 GMC Denali & Contents*,

892 N.W.2d 388, 401 (Mich. Ct. App. 2016) (claimant in state forfeiture proceeding retained title to vehicle where intended transferee did not sign the title application).

It does not matter, for purposes of § 257.233(9), whether Malinowski received the title document. Malinowski claims he did, and that, under *Perry v. Golling Chrysler Plymouth Jeep, Inc.*, 729 N.W.2d 500 (Mich. 2007), he thus has a valid claim for ownership. But *Perry* is a poor guide here. At issue there was the then-existing version of the MVC, which made the effective date of title transfer "the date of execution" of the title. The Michigan Supreme Court read that phrase to mean the date that the buyer signed the title application. *Id*. at 501. The Michigan Legislature later removed "the date of execution" language from the MVC, and instead explicitly tied the date of effective title transfer to when the buyer signs the title application. Mich. Comp. Laws § 257.233(9) (2005) (amended in 2015). The one constant statutory thread is the requirement that the buyer sign the title application, a step Malinowski failed to take. What is more, in *Perry*, the Michigan Supreme Court held that delivery of the title application to the Secretary of State was not a relevant consideration in determining legal title under the then-existing Michigan statute. 729 N.W.2d at 501. In *Perry*, in other words, there was no defect at all. Here, there is a glaring one.

Equally unavailing is *Goins v. Greenfield Jeep Eagle, Inc.*, 534 N.W.2d 467 (Mich. 1995). At issue there was whether certain insurance requirements issued by the Secretary of State were considered part of the broader MVC requirements necessary to successfully transfer title. *Id. Goins* held that since the Secretary never officially promulgated the insurance requirements, the dealership effected title transfer even if it failed to comply with those requirements. *Id.* at 471. Failing to satisfy supplemental, non-statutory requirements is a far cry from failing to meet the core statutory requirement of a signed title application.

That takes us to Malinowski's final case, *People v. Fratello*, No. 226847, 2002 WL 265894 (Mich. Ct. App. Feb. 19, 2002). In *Fratello*, the defendant was indicted for the theft of a vehicle he was alleged to have previously sold. The defendant claimed he still retained ownership of the vehicle since he had purposefully indorsed the title incorrectly and, separately, prevented the purchaser's attempted registration of the title by filing a "lost title" application. But the otherwise clear agreement to transfer ownership coupled with the defendant's misconduct, the court concluded, indicated that the defendant understood the car to be the victim's. *Id*. at *4. *Fratello* thus turned on the defendant's intentional, wrongful frustration of an otherwise valid title transfer. *Id.* Those exceptional circumstances are absent here. Malinowski failed to effectuate the title transfer not because of another's wrongdoing, but because he believed it would be more convenient to have an unsigned title to enable a resale.

2. Short of holding legal title, Mich. Comp. Laws § 257.37 explains that an "owner" of a vehicle also includes "any person . . . renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days." Mich. Comp. Laws § 257.37(a); *see Ringewold v. Bos*, 503 N.W.2d 716, 719 (Mich. Ct. App. 1993) ("[A] person need not hold legal title to an automobile in order to be an 'owner' of it under the code"). Malinowski also asserts ownership on this alterative ground, claiming that he had exclusive use of the Corvette for more than 30 days as its purchaser.

As a threshold response, the government argues that the term "owner" in this context is limited to the purpose of assigning responsibility for liability and insurance purposes, as opposed to denoting a person with a property interest enforceable against others. *See In re Ambrose-Burbank*, 563 B.R. at 826. True, Michigan cases addressing § 257.37(a) generally arise in the context of determining a vehicle's "owner" for the purpose of defining the scope of liability or

insurance coverage. *See, e.g.*, *Botsford Gen. Hosp.*, 489 N.W.2d 137 (Mich. Ct. App. 1992) (determining vehicle's owner for no-fault insurance purposes); *Smit v. Kaechele*, No. 186946, 1997 WL 33351192 (Mich. Ct. App. Apr. 11, 1997) (same); *Spigno v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831 (E.D. Mich. 2014) (determining vehicle's owner for liability purposes); *Perry*, 729 N.W.2d at 64 (same); *Ringewold*, 503 N.W.2d at 133 (same). But Michigan courts have not strictly limited § 257.37(a)'s applicability to those settings. For instance, in *People v. Jackway*, the Michigan Court of Appeals, citing § 257.37(a), held in a criminal case that where one bought a truck, kept the truck on his property for six months, installed a new motor, and then sold the truck for proceeds, it was reasonable for a jury to conclude he had "exclusive use" of the truck for more than 30 days, making him the truck's "owner." No. 313703, 2014 WL 1510120, *2 (Mich. Ct. App. Apr. 15, 2014).

Assuming § 257.37(a) does provide a legal basis for Malinowski to prove ownership, he nonetheless fails to allege sufficient indicia of ownership to establish his "exclusive use" of the Corvette. Michigan courts have found sufficient indicia of ownership where an owner purchased a truck, kept it on his property for six months, installed a new motor, and then sold it for proceeds. 2014 WL 1510120, at *2. They have done so where one purchased a vehicle for her daughter's use, bought insurance, and then transferred license plates from another vehicle to the one at issue. *Ringewold*, 503 N.W.2d at 718. And they have done so where a florist business used a vehicle primarily for the business, modified the vehicle for that purpose, and attributed 94 percent of both the miles driven and associated expense to the business. *Smit*, 1997 WL 33351192, at *2. All Malinowski claims, by comparison, is to have purchased the Corvette with an intention to sell it for profit. It is hard to imagine a barer list of indicia of ownership. And one of those purported "indicia"—that Malinowski purchased the Corvette using cash—is equally consistent with the

theory that he had purchased the Corvette not for himself, but for his father, as his father's agent, given the location of the title in Roe's safe. *See Botsford Gen. Hosp.*, 489 N.W.2d at 141 (holding that the fact a husband handed money to a seller and took possession of the car and its title did not conclusively establish his ownership as he could have been acting as an agent for his wife, who retained actual possession of the unsigned title after purchase).

Malinowski's best authority is *Schwarze v. Dilworth*, No. 257467, 2006 WL 2085311 (Mich. Ct. App. July 27, 2006). Yet even there, the court found ownership based on the purchase, insuring, and receipt of sale proceeds of a car. *Id.* at *11. Unless we treat Malinowski's *intention* to sell the Corvette as an indicia of ownership equivalent to the *receipt* of proceeds from a sale of the car, Malinowski fails even the *Schwarze* benchmark. And they are not equivalent—one can more easily intend to sell something he does not own than receive cash for doing so.

3. Because Malinowski cannot establish a property interest in the Corvette, he does not have statutory standing to assert his superior interest theory. The absence of statutory standing also defeats the bona fide purchaser theory he seeks to pursue by way of amendment.

The bona fide purchaser theory, like the superior interest theory, requires that the claimant have a state-law-created right to the property claimed. *See* 21 U.S.C. § 853(n)(6)(B) ("purchaser for the value of the right, title, or interest in the property"). As a matter of timing, the superior interest theory requires a claimant to demonstrate that her interest in the property *preceded* the defendant's conduct that gave rise to the forfeiture. The bona fide purchaser theory, on the other hand, requires that a claimant demonstrate that her interest vested after such conduct. To that end, by operation of § 853(c), the government's interest in criminally forfeited property "relates back" to the moment the conduct giving rise to the forfeiture occurs. Between that point and the point when forfeiture proceedings are initiated, the criminal defendant may sell the property to a buyer,

7

who is unaware of the government's interest in the property. Section 853(n)(6)(B) protects that unwitting buyer by allowing her to challenge the forfeiture if she exchanged value for the property in question and had no reason to believe the property was subject to forfeiture. *See* 21 U.S.C. § 853(c) (government interest in criminally forfeited property vests in "property that is subsequently transferred to a person other than the defendant . . . unless the transferee establishes pursuant to subsection (n) that he is a bona fide purchaser for value"); *see also United States v. Galemmo*, 661 F. App'x 294, 302 (6th Cir. 2016) (Moore, J., concurring); *United States v. Soreide*, 461 F.3d 1351, 1356 (11th Cir. 2006).

As with the superior interest theory, however, a claimant asserting a bona fide purchaser theory still must have owned the property at some point. And as already explained, Malinowski failed to demonstrate indicia reflecting his ownership of the Corvette. Accordingly, amending the petition to add this alterative theory would have been futile.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.