*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TYRONE RODGERS, by Guardian and Conservator
VALERIE FREEMAN,

       Plaintiff-Appellant,

v

CHAMPS AUTO SALES, INC.,

       Defendant-Appellee.

UNPUBLISHED
January 20, 2022

No. 355589
Wayne Circuit Court
LC No. 19-008719-NI

---

TYRONE RODGERS, by Guardian and Conservator
VALERIE FREEMAN,

       Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant/Cross-Plaintiff-Appellee,
and

DONNA SIMMONS,

       Defendant,
and

TIFFANY HARRIS,

       Defendant/Cross-Plaintiff,
and

CHAMPS AUTO SALES, INC.,

No. 355596
Wayne Circuit Court
LC No. 18-013077-NI

-1-

Defendant/Cross-Defendant-Appellee.

Before:  GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff Tyrone Rodgers, by his Guardian and Conservator Valerie Freeman, appeals by leave granted the trial court's order granting summary disposition in favor of defendant/cross-defendant, Champs Auto Sales, Inc. (Champs).[1]  For the reasons set forth in this opinion, we reverse the order of the trial court and remand for further proceedings.

## I.  BACKGROUND

This case arises out of a pedestrian and motor vehicle accident that occurred on July 2, 2016.  The issues on appeal solely concern the ownership of the vehicle on the date of the accident.

On June 30, 2016, defendants Donna Simmons and Tiffany Harris signed a purchase agreement to buy a 2005 Dodge Magnum from Champs.  The purchase agreement lists both Simmons and Harris as the buyers of the vehicle, and it lists Champs as the seller.  On the same date, an application for Michigan title and registration was also completed that listed Champs as the dealer and both Simmons and Harris as owners of the Magnum.

On July 2, 2016, Harris was driving the Magnum and allegedly struck Rodgers, who had apparently walked into the middle of the street.  Harris claimed in her deposition that she changed lanes after seeing Rodgers in the road and did not hit him.  Harris testified that she stopped the car after hearing a "boom."  Simmons was riding in the car with Harris.

At some point after the accident occurred, Simmons took the Magnum back to Champs. Simmons claimed that she did so because the company that financed her purchase informed her there was a discrepancy between the vehicle's mileage as contained within a CARFAX report and the odometer reading listed on the paperwork Simmons completed in purchasing the vehicle from Champs.  The CARFAX report, which is in the record, shows that the Magnum had over 100,000 more miles in 2015 than the number of miles reflected on the application for title completed when Simmons and Harris purchased the vehicle from Champs.  According to Simmons, after she returned the Magnum to Champs, Champs retained the vehicle and returned her deposit.  Simmons testified that she had the Magnum for approximately "a week and a half" from the time she purchased the vehicle from Champs until the time that she brought it back to Champs and received a refund of her deposit.  Alvin Alosachi, Champs's finance manager, denied that Champs had tampered with the Magnum's odometer.

---

[1] *Rodgers v Champs Auto Sales, Inc*, unpublished order of the Court of Appeals, entered March 31, 2021 (Docket No. 355589); *Rodgers v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered March 31, 2021 (Docket No. 355596).

Plaintiff's negligence claim against Champs was based on plaintiff's assertion that Champs owned the Magnum and that Harris had been driving it on the day of the accident with the permission of Champs.

Champs moved for summary disposition in the trial court under MCR 2.116(C)(8) and MCR 2.116(C)(10). Champs denied it was the owner of the Magnum on the day of the accident because Simmons and Harris executed the title application, thereby transferring ownership from Champs to the two individuals. Champs argued that it voided the deal and provided a full refund after Simmons returned the vehicle within the window for a no-questions-asked return. Champs maintained that the return occurred after the accident and that there was no record of the sale with the State of Michigan because the return occurred before the deadline for filing the title paperwork with the state. The trial court granted the motion. These appeals followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary disposition de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Although Champs moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), the trial court did not specify which subrule supported its grant of summary disposition. However, because the parties attached and relied on documentary evidence attached to the pleadings, we will consider the motion as having been granted under MCR 2.116(C)(10). *Kass v Tri-County Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999).

A motion for summary disposition may be granted under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." This Court "review[s] a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

In addition, "[t]his Court reviews questions of statutory interpretation de novo." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). "The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citation omitted). "[W]here the statutory language is clear and unambiguous, the statute must be applied as written." *Id*. (quotation marks and citation omitted; alteration in original).

## III. ANALYSIS

Plaintiff seeks to hold Champs liable under the owner's liability statute, MCL 257.401, which is contained within the Michigan Vehicle Code, MCL 257.1 *et seq*. Plaintiff specifically relies on MCL 257.401(1), which provides as follows:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a

violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

The purpose of the owner's liability statute is "to place the risk of damage or injury on the person who has the ultimate control of the motor vehicle, as well as on the person who is in immediate control." *Cooke v Ford Motor Co*, 333 Mich App 545, 555; 963 NW2d 405 (2020) (quotation marks and citation omitted). The term "owner" is defined for purposes of the Michigan Vehicle Code in MCL 257.37, which states:

"Owner" means any of the following:

(a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.

(b) Except as otherwise provided in section 401a,[2] a person who holds the legal title of a vehicle.

(c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

Plaintiff argues on appeal that Champs never transferred legal title to Harris or Simmons because Champs never filed the title paperwork with the Secretary of State and voided the sales transaction. Plaintiff contends that because the transfer of title was never completed, Champs was "a person who [held] legal title" of the Magnum under MCL 257.37(b) at the time of the accident.

Here, Harris and Simmons signed the application for title on June 30, 2016, before the July 2, 2016 accident. Under MCL 257.233(9), the transfer of title became effective on June 30, 2016 because Harris and Simmons, as the purchasers, signed the application for title on that date:

Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle is the date of signature on either

---

[2] MCL 257.401a provides that "[a]s used in this chapter, 'owner' does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days." This section is inapplicable under the circumstances of this case.

the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee. [MCL 257.233(9).]

Our Supreme Court has specifically held, with respect to MCL 257.233(9), "that 'execution' is complete at signing and thus at that moment title transfers to the new owner, without regard to mailing or delivery to the Secretary of State." *Perry v Golling Chrysler Plymouth Jeep, Inc*, 477 Mich 62, 64; 729 NW2d 500 (2007). Accordingly, the fact that the application had not yet been transmitted to the Secretary of State did not prevent title from passing to Harris and Simmons on June 30, 2016. *Id.* at 64, 67.

However, our Supreme Court has also explained with respect to the definition of an "owner" under MCL 257.37 that "ownership is not cast in stone" and "can be transferred." *Goins v Greenfield Jeep Eagle, Inc*, 449 Mich 1, 5; 534 NW2d 467 (1995). Moreover, "[t]here may be several owners of a motor vehicle, within the meaning of the Michigan Vehicle Code, with no one owner possessing all the normal incidents of ownership." *Id.* (quotation marks and citations omitted). An automobile dealership will be relieved of any liability associated with a vehicle it sold if ownership is successfully transferred to the purchaser. *Id.* at 5-6. But if a sale of a motor vehicle is determined to be void, then the seller remains the owner. *Michigan Mut Auto Ins Co v Reddig*, 129 Mich App 631, 635; 341 NW2d 847 (1983); see also *Goins*, 449 Mich at 13.

Here, plaintiff argues that Champs never completed the transfer of title to Harris or Simmons because there was a discrepancy in the odometer mileage and Champs "voided" the sale. Plaintiff further argues that fraud in the procurement of a contract may render the contract void *ab initio* and that when Champs voided the sale based on the odometer discrepancy, Champs declared the sale null and without legal effect. As a result, plaintiff maintains, no transfer was effectuated and Champs remained *an owner* of the Magnum at the time of the accident such that Champs could be held liable under MCL 257.401(1).

The purpose of a seller of a motor vehicle complying with the requirements of the odometer statute, MCL 257.233a,[3] is simple: to prevent fraud upon the buyer of a motor vehicle. Additionally, failure to comply with the statute "renders the transaction voidable by the purchaser." *Whitcraft v Wolfe*, 148 Mich App 40, 54; 384 NW2d 400 (1985). "Generally, [f]raud in the inducement to enter a contract renders the contract *voidable* at the option of the defrauded party . . . ." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018) (quotation marks and citations omitted; alteration and ellipsis in original). Consequently, a contract procured by fraud may be rescinded and declared void *ab initio* by the defrauded party. *Id.* at 408-409. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id.* at 409. The rescinded contract is "considered never to have existed." *Id.* at 408. With respect to a voidable contract, "the party with the power of avoidance has the unilateral option to either rescind the contract and avoid the obligation of performance, or to ratify the contract and render it enforceable." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 548; 872 NW2d 412 (2015).

---

[3] MCL 257.233a requires, among other things, that a person not alter an odometer or allow an odometer to be altered. See MCL 257.233a(6).

The parties in this case, although generally agreeing that Simmons brought the Magnum back to Champs after the accident for a refund, dispute whether to characterize that event as a "return" or as the sales transaction being "voided." Champs argues that Simmons "returned" the vehicle for a refund and that this did not result in retroactively making Champs an "owner" at the time of the accident that occurred during the time between the sale and the return of the vehicle. Champs does not dispute that it accepted the return of the vehicle from Simmons. Plaintiff argues that Champs "voided" the sale, allegedly because of the discrepancy involving the odometer reading of the vehicle's mileage, and that this resulted in making the sale "void *ab initio*" as if the sale never existed.[4] The evidence, when viewed in a light most favorable to plaintiff as the nonmoving party, supports plaintiff's position.

Accordingly, there is a question of fact regarding the circumstances of the disintegration of the sales transaction, including the reason that Champs retained ownership of the Magnum and refunded the deposit. If, as is supported by the evidence viewed in a light most favorable to plaintiff, the sale was rescinded and declared void *ab initio* as result of fraud by Champs, then Champs remained an owner of the Magnum for purposes of the Motor Vehicle Code. *Bazzi*, 502 Mich at 408-409; *Goins*, 449 Mich at 13; *Whitcraft*, 148 Mich App at 54; *Michigan Mut Auto Ins*, 129 Mich App at 635. *Perry* was silent on what effect rescission of the sales contract for fraud by the dealer would have on the status of title. Because there was a genuine issue of material fact regarding whether this was the reason for undoing the sales transaction in this case, the trial court erred by granting summary disposition in favor of Champs. We further note that the trial court entered an order stating that summary disposition was granted "for the reasons stated on the record" but apparently did not actually make any record of those reasons, which impedes the process of providing meaningful appellate review. The trial court erred by granting summary disposition, and we therefore reverse.[5]

Reversed and remanded for further proceedings consistent with this opinion. We do not

---

[4] Defendant State Farm also makes this argument. Champs disputes that it engaged in any odometer tampering or fraud.

[5] Champs contends that even if it were deemed an owner under MCL 257.37, it could not be liable for plaintiff's injuries because it did not consent to Harris driving the Magnum on the day in question. See MCL 257.401(1) ("The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge."). To begin, Champs provides no factual support for this assertion. Thus, for purposes of a motion for summary disposition under MCR 2.116(C)(10), Champs cannot rely on mere denials or unsupported assertions. See MCR 2.116(G)(4). At best, Champs's argument highlights there is an issue of fact as to whether Champs did consent to Harris and Simmons using the vehicle. The evidence that both Harris and Simmons were listed as buyers and owners of the Magnum on the documents completed during the alleged sale by Champs on June 30, 2016, supports a conclusion that Champs would have had—at least— implied knowledge that Harris would drive the vehicle. Therefore, this argument does not change our conclusion on appeal.

retain jurisdiction.  Plaintiff having prevailed is entitled to costs.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause