*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JOHN SWANZY by VICKI
SWANZY, Personal Representative,

      Plaintiff-Appellee,

v

EDWARD J. KRYSHAK, M.D.,

      Defendant,

and

SPECTRUM HEALTH PRIMARY CARE
PARTNERS, doing business as SPECTRUM
HEALTH MEDICAL GROUP,

      Defendant-Appellant.

FOR PUBLICATION
March 11, 2021
9:20 a.m.

No.   351649
Kent Circuit Court
LC No.   18-008023-NH

Before: MURRAY, C.J., and M. J. KELLY and RICK, JJ.

M. J. KELLY, J.

Defendant, Spectrum Health Primary Care Partners, doing business as Spectrum Health Medical Group (Spectrum), appeals by leave granted[1] the trial court order granting partial summary disposition in favor of plaintiff Vicki Swanzy, the personal representative of the estate of the decedent, John Swanzy. At issue is whether the claims against Spectrum based upon the alleged negligence of its employee, Robin Zamarron, an unlicensed medical assistant, sounds in ordinary negligence or medical malpractice. For the reasons stated in this opinion we conclude that both claims sound in ordinary negligence, so we affirm.

---

[1] *Estate of Swanzy v Kryshak*, unpublished order of the Court of Appeals, entered March 31, 2020 (Docket No. 351649).

## I. BASIC FACTS

In June 2016, the decedent was being treated for diabetes by defendant Edward J. Kryshak, M.D. At that time, Dr. Kryshak, an endocrinologist, was employed by Spectrum. According to the amended complaint, before June 2016, the decedent's diabetes had been treated with Humulin R U-500 vials, but during a March 2016 hospitalization, his medication was changed and Dr. Kryshak opted to continue with the new medication. Subsequently, on June 23, 2016, the decedent's blood sugars were in the 400s, so he and his wife called his primary care physician, who allegedly rerouted the call to Dr. Kryshak's office at Spectrum. Thereafter, on June 24, 2016, a Friday, Dr. Kryshak prescribed the decedent Humulin R U-500 Kwikpen.

Because she believed that the Kwikpen would not be immediately available at the pharmacy, the decedent's wife called Dr. Kryshak's office to ask if she could use an old vial of Humulin R U-500. Plaintiff alleges that the decedent's wife spoke on the phone with Zamarron, who "without caution or instruction" said "yes" to the substitution of insulin medications and directed her to administer "100 units." The decedent's wife then drew 100 units of Humulin R U-500 from the vial and administered it to the decedent. Tragically, 100 units of Humulin R U-500 vial is five times as much as 100 units of Humulin R U-500 Kwikpen, and the decedent fell into a hypoglycemic-induced coma and died.

On September 7, 2018, plaintiff filed a complaint against Spectrum and Dr. Kryshak. The complaint was amended on March 1, 2019 after Zamarron was identified as the medical assistant who allegedly gave incorrect dosage and medication-substitution advice. It is undisputed that (1) Zamarron was employed by Spectrum; (2) that in her role as a medical assistant she sometimes assisted Dr. Kryshak, including by answering phone calls, and (3) that, although she is a certified medical assistant, she is not licensed.

Count 1 of plaintiff's amended complaint includes allegations that Spectrum is vicariously liable for Zamarron's negligence in independently giving incorrect insulin substitution and dosage information to the decedent's wife, and allegations that Spectrum is directly liable for negligently training and supervising Zamarron. In Count 3—which did not include a claim of direct negligence based on improper supervision—plaintiff alleged in the alternative a medical-malpractice claim against Spectrum, contending that the same conduct by Zamarron constituted a breach of the local standard of care for medical professionals. In February 2019, plaintiff moved for partial summary disposition under MCR 2.116(C)(9), arguing that Spectrum's defense to Count 1 failed as a matter of law because the claim sounded in ordinary negligence, not medical malpractice. The trial court denied the motion without prejudice but stated that plaintiff could refile under MCR 2.116(C)(7).

Thereafter, plaintiff filed a renewed motion for partial summary disposition under MCR 2.116(C)(7), (9), and (10), arguing that Count 1 of the complaint sounded in ordinary negligence because Spectrum was not capable of being sued for medical malpractice. Plaintiff contended that under *Kuznar v Raksha Corp*, 481 Mich 169; 750 NW2d 121 (2008), the only individuals or entities capable of medical malpractice are (1) licensed health care professionals, (2) licensed health facilities or agencies, or (3) the employees or agents of a licensed health facility or agency. Thus, because Spectrum admitted that its medical assistants (including Zamarron) were not licensed health care professionals and that it was not a licensed health facility or agency, plaintiff argued there was no entity capable of committing medical malpractice so the claim necessarily

sounded in ordinary negligence. In response, Spectrum asserted that under the definition of licensed health care professional in MCL 600.5838a(1)(b), it could be held vicariously liable for the negligent administration of professional services by its employees or agents, which included Zamarron, who was an agent of Dr. Kryshak, who was, in turn, licensed under section 15 of the Public Health Code, MCL 333.1101 *et seq.* Spectrum relied on *Potter v McCleary*, 484 Mich 397, 402-403; 774 NW2d 1 (2009), which held that a professional corporation could be held vicariously liable for the medical malpractice of a licensed health care professional that it employed. Spectrum also relied heavily on *Estate of Flie v Oakwood Healthcare, Inc*, unpublished per curiam opinion of the Court of Appeals, issued December 12, 2017 (Docket No. 333389). In *Flie*, this Court held that whether a negligent actor was licensed or not was "not necessarily relevant" to determine whether a claim sounded in ordinary negligence or medical malpractice. *Id*. at 7. "Rather, if an employee is one that provides professional services through a [professional corporation], then the actions of the [professional corporation], and therefore of the employee, are treated as the actions of a licensed health care provider, regardless of the employee's licensure." *Id*. The trial court, however, determined that *Potter*'s holding, and *Flie*'s holding by extension, only applied to professional corporations, whereas Spectrum was a domestic nonprofit corporation. The court, therefore, granted partial summary disposition in favor of plaintiff.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Spectrum argues that the trial court erred by granting plaintiff's motion for partial summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Likewise, we review de novo whether the nature of a claim asserted sounds in ordinary negligence or medical malpractice. *Bryant v Oakpointe Villa Nursing Centre, Inc*, 471 Mich 411, 419; 684 NW2d 864 (2004). Because such claims are appropriately raised under MCR 2.116(C)(7) we must consider "all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Id*. Our review of a trial court's interpretation of a statute is also de novo. *Kuznar*, 481 Mich at 176. A de-novo review means that we "review the legal issue independently, without deference to the lower court." *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 118-119; 949 NW2d 73 (2020).

### B. ANALYSIS

When determining whether a claim sounds in ordinary negligence or medical malpractice, a reviewing court must determine: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. "If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*. "A professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional health-care services to the plaintiff." *Kuznar*, 481 Mich at 177. Because "[a] malpractice action cannot accrue against someone who, or something that, is incapable of malpractice[,]" *Adkins v Annapolis Hosp*, 420 Mich 87, 95; 360 NW2d 150 (1984), a

determination of whether a person or entity is capable of malpractice "is a necessary condition for bringing a malpractice suit." *Randall v Mich High Sch Athletic Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346476); slip op at 12; see also *Bryant*, 471 Mich at 420 ("The first issue in any purported medical malpractice case concerns whether it is being brought against someone who, or an entity that, is capable of malpractice."); and *LaFave v Alliance Healthcare Srvs, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345986); slip op at ___ (accord).

"MCL 600.5838a(1) is an accrual statute that indicates when a medical malpractice cause of action accrues." *Bryant*, 471 Mich at 420. It provides:

> (1) For purposes of this act, a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health profession in a sole proprietorship, partnership, professional corporation, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. As used in this subsection:
>
> (a) "Licensed health facility or agency" means a health facility or agency licensed under article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22260 of the Michigan Compiled Laws.
>
> (b) "Licensed health care professional" means an individual licensed or registered under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.16101 to 333.18838 of the Michigan Compiled Laws, and engaged in the practice of his or her health profession in a sole proprietorship, partnership, professional corporation, or other business entity. However, licensed health care professional does not include a sanitarian or a veterinarian.

MCL 600.5838a(1) expands "the traditional common-law list of those who are subject to medical malpractice actions." *Bryant*, 471 Mich at 420.[2] Thus, although "[u]nder the common law only physicians and surgeons were potentially liable for medical malpractice," the category of persons

---

[2] The *Bryant* Court cautioned that although MCL 600.5838a(1) expanded the category of persons or entities that may be subject to a medical malpractice action, "it does not define what constitutes a medical malpractice action." *Bryant*, 471 Mich at 420-421. Therefore, if a defendant falls within the category of persons or entities who are capable of medical malpractice, it only means that the plaintiff's claim may possibly sound in medical malpractice. *Id*. at 421. See also *Potter*, 484 Mich at 416 n 25 (recognizing that satisfying the first prong of a medical-malpractice action "requires more than mere inclusion within the Public Health Code lists," but also noting that "inclusion within either § 5838a or the Public Health Code lists is a necessary predicate to an action sounding in medical malpractice.").

and entities that can be held liable for medical malpractice now encompasses "a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency . . . ." *Kuznar*, 481 Mich at 177, quoting MCL 600.5838a(1). As explained by our Supreme Court in *Potter*, "only those providers and facilities covered by § 5838a can meet the professional relationship prong of the test" to determine whether a claim sounds in ordinary negligence or medical malpractice. *Potter*, 484 Mich at 415.

The issue on appeal is whether Spectrum, a nonprofit corporation, is capable of medical malpractice. At the outset, it is undisputed that Spectrum does not qualify as a licensed health care facility or agency as that term is defined in MCL 600.5838a(1)(a). Further, there is nothing on the record to suggest that Spectrum is an employee or agent of a licensed health care facility or agency. Consequently, it can only be capable of malpractice if it qualifies as a licensed health care professional under MCL 600.5838a(1)(b). To answer that question, we turn to our Supreme Court's decision in *Potter*.

The plaintiff in *Potter* brought a claim against a professional corporation based solely on the professional corporation's vicarious liability for the "professional services of its licensed health care provider-employee," a physician. *Potter*, 484 Mich at 402-403. As part of its analysis, our Supreme Court examined whether a professional corporation was "an entity against which a medical malpractice action could be asserted." *Id*. at 417-418. The Court first concluded that it was unnecessary to determine whether a professional corporation was a licensed health care facility or agency under § 5838a(1)(a) "because the plain language of § 600.5838a, as amended effective April 1, 1994, expressly includes professional corporations within its definitional section." *Id*. at 417. The Court reasoned that "[t]he specific addition of professional corporations to § 5838a was a clear statement by the Legislature that it intended a [professional corporation] to be an entity against which a medical malpractice action could be asserted." *Id*. at 417-418.

Second, the Court recognized that "the placement of the reference to *professional corporations* within § 5838a(1)(b) (defining health care professionals), rather than within § 5838a(1)(a) (defining health facilities), stands as a recognition of the nature of services as delineated in the Professional Service Corporation Act, MCL 450.225." *Id*. at 418. In that regard, the Court recognized that under MCL 450.225 (now MCL 450.1285(1)),[3] a professional corporation "can only render professional services through its employee or agents who are licensed or legally authorized to render the professional services." *Id*. at 412. The Court explained that the language in MCL 450.225 stood "as a legislative recognition that when a [professional corporation] renders professional services, it is inexorably linked to the licensed health care provider." *Id*. Thus, the professional corporation "and the health care provider are treated as the same entity when professional services are involved." *Id*. Accordingly, the Court held that "[w]here the services provided are professional services rendered by a licensed health care provider, any claim challenging those services as being negligent sound in medical malpractice, and the statutes governing medical malpractice apply." *Id*. (emphasis added). But if the services are not professional services as defined in MCL 450.225, then "the claim would not be subject to

---

[3] See 2012 PA 569.

the medical malpractice requirements because those claims sound in ordinary negligence." *Id*. Because the professional services provided by the professional corporation in *Potter* were rendered by a licensed health care provider, the *Potter* Court concluded that the professional corporation was an entity capable of being sued in medical malpractice. *Id*. at 402.

Applying *Potter* to this case, we must first determine whether a nonprofit corporation is included in the definitional section of MCL 600.5838a(1). As with all statutory interpretation, we turn to the statutory language to determine the Legislature's intent. *Potter*, 484 Mich at 410. Here, § 5838a(1)(b) includes a list of business entities through which a licensed health care professional can engage in his or her health profession: "a sole proprietorship, partnership, professional corporation, or other business entity." When interpreting a statute, "words grouped in a list should be given related meaning." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 533; 697 NW2d 895 (2005) (quotation marks and citation omitted). In that regard, the phrase "other business entity" is broad and encompasses other business entities through which a licensed health care professional can engage in his or her health profession. A nonprofit corporation is a business entity. See *Black's Law Dictionary* (11th ed) (defining a corporation as "[a]n entity (usu. a business) having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely . . . ."). Further, it is different in kind or nature from sole proprietorships, partnerships, and professional corporations. Thus, it qualifies as an "other business entity."

Having determined that a nonprofit corporation is included in the definitional section, we next must determine whether it can render professional services through a licensed health care professional. MCL 450.2261(6) provides that a domestic nonprofit corporation "may be formed . . . for the purpose of providing services in a learned profession and may employ and enter into other arrangements with duly licensed or authorized individuals who shall furnish those services on behalf of the corporation."[4] MCL 450.2261(6). Subject to a few exceptions that are not relevant in this case, "any duly licensed or authorized individual who is employed by a corporation described in subsection (6) is personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him or her, or by any individual under his or her direct supervision and control, while rendering professional services on behalf of the corporation to the person for whom those professional services were being rendered." MCL 450.2261(7). Therefore, we conclude that, like a professional corporation, a nonprofit corporation can provide professional services through any licensed health care providers that it employs. Consequently, under § 5838a(1)(b), as interpreted by our Supreme Court in *Potter*, a plaintiff may maintain a claim against a nonprofit corporation based solely on the nonprofit corporation's vicarious liability for the professional services of its licensed health care provider-employees. See *Potter*, 484 Mich at 402-403.

---

[4] In turn, MCL 450.2109(3) defines the "services of a learned profession" as "services provided by a dentist, an osteopathic physician, a physician, a surgeon, a doctor of divinity or other clergy, or an attorney at law."

This theory of liability is, in fact, the basis for Count 2 of plaintiff's amended complaint, which alleges that Spectrum is vicariously liable for Dr. Kryshak's professional negligence. In that regard, MCL 600.5838a(1)(b) treats Spectrum and Dr. Kryshak (a licensed health care professional) as "the same entity when professional services are involved." Count 1 of plaintiff's amended complaint, however, does not include any allegation that Spectrum is vicariously liable for the professional negligence of any individual who qualifies as a health care professional under § 5838a(1)(b). Rather, plaintiff seeks to hold Spectrum vicariously liable for the alleged negligence of Zamarron, an *unlicensed* medical assistant, and directly liable for Spectrum's own negligence in failing to properly train that unlicensed medical assistant. We address each in turn.

An institutional defendant may be held either (1) directly liable through claims of negligent supervision, selection, and retention of staff, or (2) vicariously liable for the alleged negligence of its agents and employees. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002). Here, Spectrum is not capable of being directly sued for professional malpractice under MCL 600.5838a(1)(a) and it can only be held vicariously liable under MCL 600.5838a(1)(b). Consequently, Spectrum is incapable of independently committing medical malpractice, so plaintiff's direct-liability claims for negligent training, supervision, selection, and retention of staff must necessarily sound in ordinary negligence. See *Kuznar*, 481 Mich at 172 (holding that a pharmacy cannot ever be directly liable for medical malpractice because it is not a licensed health care facility or agency as that term is defined in MCL 600.5838a(1)(a)).

We must next consider whether Spectrum can be held vicariously liable for the alleged negligence of an employee or agent who is not a licensed health care professional. Four cases are on point. First, in *Kuznar*, our Supreme Court held that the plaintiff's claim alleging vicarious liability against a pharmacy for the alleged negligence of its nonpharmacist employee sounded in ordinary negligence, because the employee was neither the employee or agent of a licensed health care facility or agency nor a licensed health care professional. *Kuznar*, 481 Mich at 172. Second, in *Potter*, the Supreme Court found the professional corporation capable of being held vicariously liable for the act of its employee because that employee both rendered professional services and was a licensed health care professional. *Potter*, 484 Mich at 402-403. In addition, in *Potter*, our Supreme Court expressly stated that "when a claim asserted against a [professional corporation] involves the actions of an employee or agent *who is unlicensed* or not rendering professional services . . . such a claim would sound in ordinary negligence." *Id*. at 403 n 4 (emphasis added). Third, in *LaFave*, this Court held that the plaintiff's claim against an MRI provider was one for ordinary negligence, not medical malpractice because the MRI provider was not a licensed health care facility or agency and because its allegedly negligent employee, an MRI technician, was not a licensed health care professional. *LaFave*, ___ Mich App at ___; slip op at 3-5. Fourth and finally, in *Sabbagh v Hamilton Psychological Srvs, PLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342150); slip op at 6, this Court held that the plaintiff could not maintain a direct medical malpractice claim against the defendants, a psychological practice and a human resources company, because neither were a licensed health care facility. Further, although their employees were licensed health care professionals capable of medical malpractice, *id*., because the claims against the licensed employees were time-barred, the psychological practice and the human resources company could not be held vicariously liable for their negligence, *id*. at slip op 9-10. Common in each case is that the institutional defendant—regardless of the form the business entity took—could only be held vicariously liable for the actions of the *licensed* health care professionals employed by the institutional defendant.

*Kuznar*, *Potter*, *LaFave*, and *Sabbagh* stand for the proposition that an institutional defendant is only capable of being held vicariously liable for the professional malpractice of its employees who are licensed health care providers under MCL 600.5838a(1)(b). This interpretation is in line with the plain language of MCL 600.5838a(1), which expressly allows for a medical malpractice claim to accrue against the employees or agents of a licensed health care facility or agency, but does not similarly provide that such a claim can accrue against the employees or agents of a licensed health care professional under § 5838a(1)(b). See *Danse Corp v City of Madison*, 466 Mich 175, 182; 644NW2d 721 (2002) ("Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written. No further construction is necessary or allowed to expand what the Legislature clearly intended to cover."). Accordingly, because Spectrum's employee, Zamarron is not a licensed health care professional under MCL 600.5838a(1)(b), plaintiff's claim that Spectrum is vicariously liable for the actions of Zamarron sounds in ordinary negligence, not medical malpractice.

Spectrum argues that we should apply this Court's unpublished decision in *Flie*, which discounted the necessity of the negligent employee being a licensed health care professional and stressed that instead, the key inquiry was whether the allegedly negligent employee was or was not providing professional services. *Flie*, unpub op at 5-7. However, "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis," MCR 7.215(C)(1). Nor do we find *Flie* persuasive in light of the above published opinions from both our Supreme Court and this Court recognizing that a business entity is capable of being held vicariously liable for the medical malpractice of its *licensed* health care professionals, but not its employees who are unlicensed. Additionally, we note that in *Flie*, although there was a discussion regarding the licensure status of the medical assistant, the plaintiff sought to hold the professional corporation vicariously liable for actions of a physician it employed, not for the actions of the unlicensed medical assistant. *Id*., unpub op at 2. Thus, this Court was not tasked with evaluating whether a professional corporation could be held vicariously liable based solely upon its status as the employer of an employee who was not a licensed health care professional under MCL 600.5838a(1)(b). For those reasons, we decline to apply *Flie* here.

In sum, because a claim for medical malpractice cannot accrue against Spectrum either for its direct negligence in failing to train Zamarron or its vicarious liability for her allegedly negligent actions, plaintiff's claims raised in Count 1 of her complaint cannot sound in medical malpractice. The trial court did not err by granting partial summary disposition.

Affirmed. Plaintiff may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michelle M. Rick